[Crim. No. 902.   Third Appellate District.—April 17, 1926.]

# THE PEOPLE, Respondent, v. DANIEL MORALES, Appellant.

[1] APPEAL—ASSIGNMENTS OF ERROR—POINTS NOT ARGUED—REVIEW.— Appellate courts are not required to review assignments of error unless the party relying upon them points out the reasons upon which the assignments are founded, or shows, or attempts to show, wherein there is substantial merit in such assignments.

[2] CRIMINAL LAW—DUELING—DEATH OF ONE COMBATANT—PLEADING —ALLEGATIONS AS TO USE OF DEADLY WEAPONS—PRACTICE.—In charging the crime of fighting a duel, within the meaning of sections 225 and 226 of the Penal Code, where deadly weapons are used, and the death of one of the combatants results, it is the better practice to allege in the information or indictment that deadly weapons were used by the parties in fighting the duel; but the mere failure to do so does not render the accusatory pleading subject to the objection that it does not state the offense in such manner as to enable a person of common under-

------

1. See 8 Cal. Jur. 544.

standing to know what is intended, within the meaning of subdivision 2 of section 950 of the Penal Code.

[3] ID.—MEANING OF WORD "DUEL"—DEFINITION.—The word "duel" bears a fixed, definite signification, not only colloquially but juridically, and the common and universal understanding of the word is that a duel is a combat between two persons, fought with deadly weapons, by agreement.

[4] ID.—CONFESSIONS — VOLUNTARY CHARACTER OF — EVIDENCE.—In a prosecution for fighting a duel, a sufficient foundation for admitting in evidence certain extrajudicial statements of defendant, in which he recited the circumstances leading to and attending the fatal combat between himself and deceased involving, in effect, a confession of the crime charged, where, before offering these statements in evidence, the district attorney showed that, preliminarily to asking defendant any questions about the combat and prior to the making of the statements by defendant relative to the circumstances or facts of the fight, he informed the accused that he was not required to make a statement and that if he did make such a statement, it must be voluntary on his part, and that whatever statement he might make which would involve a confession of the commission of a crime or any incriminatory admissions regarding any charge growing out of the killing of deceased would be used against him.

[5] ID.—CONFESSIONS—FOUNDATION FOR ADMISSION IN EVIDENCE.—All that it is necessary to show before a confession by a defendant that he committed the crime with which he is charged may be proved is that he made the confession freely and voluntarily, or without being coerced to make the confession by threats or undue pressure of any sort practiced upon him by those in authority, or upon promises of reward or leniency by those having authority, either real or apparent, to grant immunity from punishment or from the heavier penalties of the law, and it is not necessary to show in addition the time and place at which the confession was made and the persons present at such time and place.

(1) 17 C. J., p. 181, n. 38, p. 182, n. 44. (2) 19 C. J., p. 827, n. 33 New; 31 C. J., p. 659, n. 72, p. 661, n. 95. (3) 19 C. J., p. 825, n. 1, 2, p. 826, n. 19, 22. (4) 16 C. J., p. 725, n. 43. (5) 16 C. J., p. 733, n. 97 New, 1, p. 734, n. 20.

APPEAL from a judgment of the Superior Court of Placer County and from an order denying a new trial. J. B. Landis, Judge. Affirmed.

3. See 9 Cal. Jur. 940; 8 R. C. L. 346.
5. See 8 Cal. Jur. 115.

The facts are stated in the opinion of the court.

A. K. Robinson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Placer County of the crime of fighting a duel with one Zacharius Martinez, which resulted in the immediate death of the last named. (Pen. Code, secs. 225, 226.) He made a motion for a new trial and the same was denied. He appeals from the judgment of conviction and the order denying him a new trial.

The defendant, as was the deceased, is a Mexican, and both, at the time of their fatal meeting on the afternoon of the seventh day of March, 1925, were employed as laborers in the sewer-pipe department of the Gladding, McBean & Company pottery, at Lincoln, in Placer County. About half-past 3 o'clock on the afternoon of the day named, the two men engaged in a quarrel, and, so defendant testified, the deceased called him (defendant) a "bad name," whereupon, the defendant continued to testify, the following angry colloquy took place between them: Deceased addressing defendant: "What kind of a man are you?" Defendant, replying: "You well know who I am." Deceased to defendant: "I do not think you will come out with me to-night." Defendant answered: "Let's go right now." Deceased replied, "Come on, let's go," and thereupon the two men left their work, the defendant requesting another employee to tell the foreman that he (defendant) had gone out "to arrange some business," and deceased making a like request. Before leaving the pottery, the two men agreed to meet at some spot near a "little red house," which was situated approximately three miles from and east of the town of Lincoln. The land there was hilly and covered with brush and trees. The defendant, on leaving the pottery, went directly to his home and there procured a weapon described as a "32–20" pistol. The deceased went to his home and armed himself with a Luger revolver. The defendant stated that the deceased carried two pistols or revolvers to the scene of the shooting. However, the two

men, within a short time after departing from the pottery, met at the place agreed upon. It is not necessary to go into the details herein of what occurred between the men, as described by the defendant, after they arrived at the place where the shooting was carried on. It is sufficient to state that, immediately upon reaching the place above indicated they began firing at each other, with the result, after a number of shots were exchanged, that the deceased received a mortal wound in the head, death following from said wound instantaneously, in the opinion of the doctor conducting the autopsy at the post-mortem examination of the body of the deceased, while defendant was shot in the breast, and conveyed to the county hospital of Placer County and was there administered medical treatment.

The attorney for defendant sets forth in his brief 120 distinct specifications of error alleged to have been committed by the court in the trial of the case. When called for hearing in this court the cause was submitted for decision without oral argument but upon the briefs on file, and two only of the multiplicity of specifications of error does counsel for defendant, in his briefs, attempt to support by argument, or to point out wherein the numerous rulings complained of were erroneous and prejudicial to his client. All that appears in the briefs of defendant as to each of the specifications of error, with the exception of the two referred to above, is the mere statement or charge that the court erred in giving certain instructions or in its ruling upon evidence, for example as follows: "The court erred in giving Instruction No. 20," and "the court erred in overruling defendant's objections found in lines 11 to 20, transcript, p. 22."

[1] We are not required to review assignments of error unless the party relying upon them points the reasons upon which the assignments are founded or shows or attempts to show wherein there is substantial merit therein. The appellate courts are not supposed to perform the work of counsel who present cases thereto for review. The rule thus stated and to which the appellate courts of this state almost uniformly adhere is explained as follows in *People v. McLean,* 135 Cal. 306, 309 [67 Pac. 770, 771]: "We again repeat what we have said before, that we will not examine alleged errors presented in this way. It is due to

this court from the members of the bar to point out clearly and concisely the rulings complained of as erroneous and the reasons why they are so, with reference to authorities, if any. In case counsel will not take the trouble to do so, we shall deem the matter as of not sufficient importance to merit notice in an opinion. (*People* v. *Woon Tuck Wo*, 120 Cal. 297 [52 Pac. 833].)'' The cases of *People* v. *Cebulla*, 137 Cal. 314 [70 Pac. 181], and *People* v. *Chutnacut*, 141 Cal. 682, 685 [75 Pac. 340], are to the same effect.

The two points to which counsel addresses argument in his briefs are: 1. That the information does not state a public offense and is obnoxious to the objection that it does not satisfy the requirements of sections 950, 951, and 952 of the Penal Code; 2. That it was error for the court to admit in evidence certain extrajudicial statements made by the defendant after the alleged duel was fought.

1. Section 225 of the Penal Code defines the crime with which it was sought to charge the defendant as follows: ''A duel is any combat with deadly weapons, fought between two or more persons, by a previous agreement or upon a previous quarrel.''

Section 226 of said code reads: ''Every person guilty of fighting any duel, from which death ensues within a year and a day, is punishable by imprisonment in the State prison not less than one nor more than seven years.''

The charging part of the information is as follows: '' . . . The said defendant . . . did wilfully, unlawfully and feloniously fight and engage in a duel with one Zacharius Martinez, and he, the said defendant, did then and there kill said Zacharius Martinez while he, the said defendant, was so fighting said duel with said Zacharius Martinez, a human being,'' etc.

It will be noted that the information omits to state that the duel was fought by the parties ''with deadly weapons,'' and this omission is employed as the predicate for the argument by counsel for defendant that the accusatory pleading fails in the statement of a public offense, as the crime is thus attempted to be charged.

The defendant demurred to the information on both general and special grounds, and the demurrer was overruled. The special exceptions to the information, as stated in the

demurrer, are that two different and distinct offenses are charged, to wit: 1. A felony, in that the defendant engaged "in the fight and duel with one Zacharius Martinez," and, 2. That defendant is therein charged "with committing a felony, in that he, said defendant, did then and there kill Zacharius Martinez while he, said defendant, was so fighting said duel with said Zacharius Martinez, a human being." Nowhere does the demurrer specifically or directly object to the information on the ground that therein it is not charged that the combat between the belligerents was fought with deadly weapons. The information stands challenged, therefore, on the general ground only and the question is whether it sufficiently states the offense attempted thereby to be charged to overcome the objection presented by a general demurrer, or, in other words, whether it states an offense known to the law.

[2] We think that, in charging the crime of fighting a duel, where deadly weapons were used, and the result of the fight is the death of one of the combatants, it would be the better practice to allege in the information or indictment that deadly weapons were used by the parties in fighting the duel, but we do not think that mere failure to do so would render the accusatory pleading subject to the objection that it does not state the offense "in such manner as to enable a person of common understanding to know what is intended." (Pen. Code, sec. 950, subd. 2.) The conclusion thus announced is with full appreciation of the general rule that each of the essential ingredients of a public offense, as such offense is defined by law, should be set forth in an information or indictment in clear and understandable language, or in the manner above indicated. In the present case, the information not only states that the defendant and the deceased fought a "duel," but further alleges that, in fighting such duel, and as a direct result thereof, one of the combatants was killed. [3] The word "duel" bears a fixed, definite signification, not only colloquially but juridically. Webster's Dictionary defines a "duel" as a "combat between two persons, fought with deadly weapons, by agreement." This definition is, as stated, the common—in fact, we may truthfully say the universal—understanding of the word. It, indeed, is its intrinsic signification, and

as so defined has been invariably adopted and used in the law and followed by the courts. (See 3 Words & Phrases, p. 2258; *State* v. *Fritz,* 133 N. C. 725 [45 S. E. 957]; *State* v. *Herriott,* 1 McMull. (S. C.), 126, 130; *Bassett* v. *State,* 44 Fla. 2 [33 South. 262, 265]; *Davis* v. *Modern Woodmen of America,* 98 Mo. App. 713 [73 S. W. 923, 924]; 9 Cal. Jur. 940; Const., art. XX, sec. 2.) In *State* v. *Fritz, supra,* the signification of the term is thus explained:

"A 'duel' is defined to be a combat between two persons, fought with deadly weapons, by agreement. The use of weapons of some kind seems to be a necessary ingredient of the offense, since it is held that challenging to fight a fair fight with fists and hands, and not to use any deadly weapon, is not a 'challenge to fight a duel,' within the meaning or intent of the Code, sec. 1012, providing that any person challenging to fight a duel shall be guilty of a misdemeanor."

Thus the word itself, or when taken alone, expresses as fully the complete thought embraced within its intrinsic signification as does the word "murder," without the amplification necessary to the specific expression of all the essential ingredients of the crime so generically designated, expresses the fact of the "killing of a human being with malice aforethought." When Doe says to Roe: "A murder has been committed," Roe thus immediately has conveyed to his mind the fact that someone has unlawfully, and with premeditation and malice aforethought, taken the life of another human being. In other words, it is not necessary, in ordinary parlance, to express the fact that the crime of murder has been committed, to say that some person has wilfully, premeditatedly, and with malice aforethought killed a human being. So it is true, where B is told by A that a "duel has just been fought" or "is about to be fought," that the thought thus immediately conveyed to B's mind is that at least two persons have been engaged or are about to engage in a combat with one another, with deadly weapons, by previous agreement or upon a previous quarrel. To express the fact that a duel has been fought, it would be wholly superfluous to say that it was fought between two persons, since, manifestly, no single person can fight a duel or any other kind of a personal combat. Thus

it would seem that it is tautological to say that "two persons have fought or are about to fight a duel, with deadly weapons, by previous agreement," etc.  This involves a view of section 225 of the Penal Code from a grammatical standpoint, but we do not concede the impropriety of that view of the section as an aid to the determination of the question whether the information in this case states the offense therein intended to be charged "in such manner as to enable a person of common understanding to know what is intended."  To what we have hereinabove said, we may add that if the words "with deadly weapons" had been eliminated from the section or not inserted therein by the legislature, we would have no hesitation in saying that the courts would construe the section as meaning a combat fought between two or more persons with deadly weapons and this construction would be predicated upon the proposition that such is the natural or intrinsic signification of the word "duel."

Our conclusion is, as is necessarily to be understood from the views thus expressed, that the information sufficiently complies with the requirement of the statute as to the essentials of a properly stated crime in a criminal pleading; that the defendant could not have been under the least misapprehension as to the specific crime that was intended to be charged against him, and that, in point of fact, since he made no objection to the information or objected to any evidence introduced at the trial upon the ground that the crime of fighting a duel with deceased with deadly weapons was not properly and understandably thus charged to his account, it is clear that he did not at any time experience any difficulty in determining the precise issue or charge against which he was called upon by the information to defend himself or to prepare himself for a defense.

[4]  The complaint that the rulings admitting in evidence certain extrajudicial statements of the defendant in which he recited the circumstances leading to and attending the fatal combat between himself and the deceased, and involving, in effect, a confession of guilt of the crime charged, were erroneous for the alleged reason that a proper foundation was not laid for the admission of said statements, cannot be sustained.  Immediately following the fatal shooting, the district attorney interviewed the defendant at the

county hospital and secured from him a statement, which was reduced to writing by a stenographer and admitted in evidence. A day or two thereafter the district attorney again held an interview with defendant at the county hospital and again obtained from him a statement of the facts and circumstances of the duel. This statement was also taken down and transcribed by the stenographer, and was also introduced in evidence. The facts of the case as they were given by defendant on both occasions were substantially the same. Before offering these statements in evidence the district attorney showed that, preliminarily to asking defendant any questions about the combat and prior to the making of the statements by him relative to the circumstances or facts of the fight, he informed the accused that he was not required to make a statement of the facts leading to and attending the act of killing the deceased, that if he did make such a statement, it must be voluntary on his part, and that whatever statement he might make which would involve a confession of the commission of a crime or any incriminatory admissions regarding any charge growing out of the killing of the deceased would be used against him by the People at the trial of such charge. In reply the defendant, in effect, stated that he understood the situation with respect to any statement he might make and thereupon proceeded to give his version of the circumstances and facts of the case. It is clear that a sufficient foundation was laid for admitting the statements in evidence. Counsel, however, seems to be of the opinion that, besides showing that the statements were voluntarily made, it was also necessary, before proof of the confession could be made, to show the time and place at which the same was made and the persons present at such time and place. This contention involves a confusion of the rule prescribing the prerequisite to the proof of a confession with the rule prescribing the prerequisites to the impeachment of a witness on the ground that he had at some time made statements inconsistent with the testimony given by him at the trial. (Code Civ. Proc., sec. 2052.) [5] All that it is necessary to show, before a confession by a defendant that he committed the crime with which he is charged may be proved, is that he made the confession freely and voluntarily or without being coerced to make the confession by threats or under pressure of any sort

practiced upon him by those in authority or upon promises of reward or leniency by those having authority, either real or apparent, to grant him immunity from punishment or from the heavier penalties of the law. This is elementary. If, however, the element of "time, place and persons present" were an essential component of the foundation to be established as a prerequisite to the admissibility of evidence of a confession, there would still be no ground for complaint that a proper foundation for the proof of the statements in this case was not laid prior to their reception in evidence, for the times and place at which they were made and at least some of the persons present at those times were shown in the appropriate order of proof in such instances.

Although, as above stated, most of the points suggested in the opening brief of defendant we have not been required to review for the reason heretofore explained, we have, nevertheless, read the entire record and thus have been convinced that the record is free from error of a prejudicial character, that, in fact, on the whole, the case was carefully and fairly tried, and that the verdict is abundantly supported.

Accordingly, the judgment and the order are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1926.