[Crim. No. 3. Fourth Appellate District.—May 22, 1930.]

THE PEOPLE, Respondent, v. J. M. ENTRIKEN et al., Appellants.

Frank Birkhauser for Appellants.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

MARKS, J.—An indictment was returned by the grand jury of Imperial County charging appellants and Y. Takahashi, an alien Japanese, with the crime of conspiring together in the making of a lease of agricultural lands in violation of the Alien Land Law of the state of California. The case was dismissed against Takahashi to enable him to become a witness for the People, and the jury found the appellants guilty as charged.

It appears that appellants were the owners of the land in question. Some time prior to July 1, 1928, Takahashi went into possession of the land and began to farm it. In November, 1928, a written lease was signed under date of July 1, 1928, with appellants appearing therein as lessors and K. Kosuzume as lessee. The lessee's name was signed to the lease by Takahashi without any authority. In fact, there is a strong intimation in the record that Kosuzume was a fictitious person who had no existence outside of Takahashi's mind. Takahashi remained in possession of the land and continued to farm it with the knowledge of appellants. He paid them the annual rent prior to July 1, 1928, by giving them $40 in cash and $510 in the form of his personal check. When Takahashi first broached the question of a lease on the land he was told by appellants that they could not lease to him as he was an alien Japanese, but that they would lease to a citizen of the United

States. When the lease bearing the name of Kosuzume upon it was presented to them, neither of the appellants had ever seen such a person and possessed no information that he existed, or if he did exist, that he was not an alien Japanese. Takahashi was born in Japan, which country he left in 1903, landing in San Francisco. Appellants knew that he was not a citizen and refused to lease their land to him. Neither of them made the slightest effort to learn anything about Kosuzume and showed neither interest in their purported tenant nor even curiosity about him.

Appellants maintain that the indictment did not charge a public offense against them, it charging that they "did wilfully, unlawfully and feloniously conspire together" and omitted to charge that this was done "knowingly." This question has been decided adversely to appellants in the case of *People* v. *Calvert*, 93 Cal. App. 568 [269 Pac. 969], where it was held that to do a thing wilfully is to do it knowingly.

Appellants complain of certain alleged misconduct on the part of the district attorney in the presence of the jury. Immediately following the first alleged misconduct the district attorney withdrew his remarks and the jury was promptly instructed to disregard them, thereby curing the error, if any there was. (*People* v. *Ong Mon Foo*, 182 Cal. 697 [189 Pac. 690]; *People* v. *Beggs*, 178 Cal. 79 [172 Pac. 152].) The other remarks assigned as error were as follows:

"By Mr. Birkhauser:

"Q. The District Attorney of the County of Imperial, State of California, told you, Takahashi that if you would testify in this case on behalf of the People of the State of California, he would dismiss the charge against you, did he?

"A. Yes, sir.

"Mr. Birkhauser: That is all.

"Questions by Mr. Patterson:

"Q. Where did I tell you that?

"A. No.

"Q. What do you mean by no, I did or I didn't tell you that?

"A. The District Attorney did not tell me such a thing.

"Q. Now Takahashi—

"Mr. Birkhauser: He did dismiss the charge. It must have been a surprise to you when he has testified.

"Mr. Patterson: Since we dismissed it, it is not necessary, and the insinuation that has been made here that it was a surprise to us that he testified. We have his statement before the Grand Jury and before this was ever taken to the Grand Jury. There was one made in my office. The insinuation has been made it was a surprise to me that he made any testimony. If we hadn't known about it, we would not have dismissed. We knew we had this record twice against him, and to let the insinuation pass after we had him twice, once before it went before the Grand Jury and then after it went to the Grand Jury—

"Mr. Birkhauser: I assign all the remarks of the District Attorney as prejudicial misconduct."

It will be noted that the remarks could be understood in no other way than that they referred to Takahashi and not to appellants. We cannot see how they could prejudice them. Takahashi is not in any position to complain as the charge against him was dismissed. In his testimony he freely and fully admitted his guilt. This evidence was before the jury and the statements of the district attorney added little to this testimony which the jury was bound to consider. No other remarks were assigned as error and while we have read those complained of by appellants, we will not lengthen this opinion with a discussion of them. They were not sufficiently prejudicial to require a reversal of the judgment and in the absence of assignments of error we must decline to review them. (*People* v. *Ong Mon Foo, supra; People* v. *Dominguez,* 61 Cal. App. 282 [214 Pac. 448]; *People* v. *Goodwin,* 105 Cal. App. 122 [286 Pac. 1087].)

 Appellants complain of instructions given by the trial court and others proposed by them and refused by it. They particularly complain of the refusal of the trial court to give the following:

"The thing requiring corroboration in the case, is the conspiracy to violate the Alien Land Law, namely that Entriken and Thompson and Takahashi all conspired together, that Entriken and Thompson, the owners of the land, would lease to Takahashi their land, knowing that Takahashi by reason of his alienage was debarred from

using, enjoying, occupying, transferring, or holding land or any interest therein for agricultural purposes, by means of substituting some other person's name in the lease, permit Takahashi to secure the benefits of his farming of the land, by the raising of crops thereon; that Entriken and Thompson conspired with Takahashi that Takahashi should forge the name of K. Kosuzume to the lease; Takahashi's testimony as to any or even all of these facts, standing alone is not sufficient to connect the defendants Entriken and Thompson with this crime. There must be some evidence independent of Takahashi's and without his testimony, tending to prove the defendants Entriken and Thompson aided or abetted him or counseled and advised him in the commission of the crime.''

Particular attention is called to the clause in the proposed instruction as follows: ''That Entriken and Thompson conspired with Takahashi that Takahashi should forge the name of K. Kosuzume to the lease.'' This attempted to inject an unnecessary and foreign element into the case. It is not a necessary element of the crime of conspiracy to violate the Alien Land Law, that the parties should conspire together to have one of their number commit the crime of forgery. While the conclusion that a forgery was committed is necessary from the evidence, it was not admitted by the appellants, who attempted to combat it as best they could. The instruction was not a proper statement of the law and was properly refused. It was also unnecessary (*People* v. *Osaki*, 209 Cal. 169 [286 Pac. 1025, 1027]). The instructions as given were fair, full and complete and we find no error in them.

The evidence of the accomplice Takahashi was sufficiently corroborated by other evidence in the case. ''His associates were persons of the Japanese race. His racial appearance and characteristics were before the jury and the trial judge'' (*People* v. *Osaki, supra*), and that he was a Japanese alien was conceded by the appellants in all their dealings with him. That Kosuzume existed only in the minds of the conspirators seems certain, as does the conclusion that Takahashi adopted and used the name ''K. Kosuzume'' for the purpose of the lease only, which was, in fact, made to him alone. Takahashi being the real lessee acting under a fictitious name and appellants knowing that he

was an alien ineligible for citizenship, and, knowing this, leased their agricultural lands to him, their guilt was amply proven and the judgment against them cannot be disturbed. The actions and conduct of appellants in their dealings with Takahashi furnish strong evidence corroborating the testimony of the accomplice. ▌ ''The law is well settled that the testimony of the accomplice need not be corroborated by direct evidence. The entire conduct of the defendant may be looked to for the corroborating circumstances and if from those circumstances the connection of the accused with the crime may be fairly inferred, the corroboration is sufficient. (*People* v. *Yeager*, 194 Cal. 452 [229 Pac. 40; *People* v. *Martin*, 102 Cal. 558 [36 Pac. 952] ; *People* v. *Demera*, 64 Cal. App. 121 [220 Pac. 673].)'' (*People* v. *Nikolich*, 93 Cal. App. 356 [269 Pac. 721, 722].),

Judgment affirmed.

Barnard, Acting P. J., concurred.

OWEN, J., *pro tem.*, Dissenting.—I dissent.

I am in full accord with the principles and reasoning set forth in Mr. Justice Seawell's opinion rendered in the case of *People* v. *Osaki*, 209 Cal. 169 [286 Pac. 1025]. But I cannot agree that the Osaki case can be used as authority to sustain the conviction of an American citizen when the district attorney has dismissed the charge against the ineligible alien in order to use such alien for the purpose of securing the conviction.

The Alien Land Act, as amended, provides (Deering's Consolidated Supp. 1925–27, p. 845) :

''Section 9a. In any action or proceeding, civil or criminal, by the state of California, or the people thereof, under any provisions of this act, when the proof introduced by the state, or the people thereof, establishes the acquisition, possession, enjoyment, use, cultivation, occupation, or transferring of real property, or any interest therein, or the having in whole or in part the beneficial use thereof by any defendant, or any of such facts, and the complaint, indictment or information alleges the alienage and ineligibility to United States citizenship of such defendant, *the burden of proving citizenship or eligibility to citizenship shall thereupon devolve upon such defendant.*''

36

"Section 9b. In any action or proceeding, civil or criminal, by the State of California, or the people thereof, under any of the provisions of this act, when the complaint, indictment or information alleges the alienage and ineligibility to United States citizenship of any defendant, proof by the state, or the people thereof, of the acquisition, possession, enjoyment, use, cultivation, occupation or transferring of real property or any interest therein, or the having, in whole or in part of the beneficial use thereof by such defendant, or any such facts, and in addition proof that such defendant is a member of a race ineligible to citizenship under the naturalization laws of the United States, shall create a *prima facie* presumption of the ineligibility to citizenship of such defendant, *and the burden of proving citizenship or eligibility to citizenship as a defense to any such action or proceeding shall thereupon devolve upon such defendant.*" (Italics supplied.)

Had the indictment not been dismissed against Takahashi the burden of proving his citizenship or eligibility to citizenship would have rested upon him. Mr. Justice Seawell, in holding the foregoing sections of the act to be constitutional, reviews at length the "rule of convenience," and makes a careful analysis of the cases which hold that where the "facts come more immediately within the knowledge of the defendant, the *onus probandi* rests upon him." If Takahashi had been prosecuted as contemplated by the Alien Land Act, his conviction would have followed, had he failed to establish his citizenship or right to it, because the fact of his citizenship is within his knowledge, and not within the knowledge of the district attorney or the People of the state. Can the *onus* pass to Entriken and Thompson, who certainly can have no more ability to prove it than the district attorney? In order to secure an acquittal the defendants would have either been compelled to prove the citizenship or eligibility of Takahashi, or that of the shadowy Kosuzume, whose name the former forged to the lease. The Alien Land Act and the Osaki case, *supra,* contemplate that upon the shoulders of ineligible aliens shall rest heavily the burden of proving their right to citizenship, because the fundamental fact is solely within their keeping.

It cannot be contended that these defendants could prove the eligibility of either Takahashi or Kosuzume, and it

must follow that when the indictment was dismissed against Takahashi the burden of proving it passed to the People. The district attorney being unable to prove eligibility, he must prove beyond a reasonable doubt and to a moral certainty that Takahashi and Kosuzume were not citizens nor eligible to citizenship before he can legally convict the two American citizens, defendants herein. Having dismissed the indictment against the chief offender, and using the alien to convict the citizens, forgetting, apparently, the whole spirit of the Alien Land Act, the reasons for its inception and enactment, he must be held to the same strict proof required in other criminal prosecutions.

It is admitted that Kosuzume was a dummy, whose name Takahashi signed to the lease of the land. There is no proof whatever that Kosuzume is either a citizen or an ineligibile alien, or that there was, or is, such a person in existence. As to the citizenship of Takahashi, he admitted he was not a citizen. He stated once that he was born in Japan, and at another place in the record says he does not know where he was born, but was told he was born in Japan. This, coupled with the fact of his speaking Japanese, and his appearance, would have convicted him under the ruling of the Osaka case, since if he were being prosecuted, the burden of proving that he was eligible or a citizen would have been his. No longer a defendant, and not charged with the *onus probandi*, the nebulous proof adduced from this co-conspirator is used to establish the *corpus delicti*. The crime charged is conspiracy to violate the Alien Land Act. The very bone and sinew of such a crime is the ineligible alienage of the dismissed conspirator. The testimony of an accomplice must be viewed with distrust, and yet the very basic element of the crime is sought here to be proved by such testimony. I refuse to believe that the highest court in our state had any such situation in mind as here presented when the opinion in *People* v. *Osaki* was handed down. In fact, Mr. Justice Seawell placed an express limitation on that decision, doubtless, in his wisdom, feeling the danger of extending the rule, when he said:

"It is not intended by what we have said to extend the rule of convenience or burden of proof to common law crimes generally designated as *malum in se,* nor to all

crimes *malum prohibitum*. We go no further than to apply the rule to the particular situation, in accordance with the express mandate of said amendments.''

Furthermore, I cannot agree with the prevailing opinion that the remarks of the district attorney as quoted were not prejudicial error. It is true that the statement made by that official referred to Takahashi, but since the defendants were charged with conspiracy, and Takahashi was a co-conspirator, any statement made by him was applicable to the defendants Entriken and Thompson.

''We have his statement before the Grand Jury, and before this was ever taken to the Grand Jury. There was one made in my office . . . If we hadn't known about it, we would not have dismissed. We knew we had this record twice against him, and to let the insinuation pass after we had him twice, once before it went before the Grand Jury and then after it went to the Grand Jury.''

That remark, made in the presence of the trial jury, was promptly assigned by the attorney for the defense as prejudicial misconduct. The jury was not instructed to disregard it. It may not be said that it would have been without effect had the remarks referred to a statement of the defendants to the district attorney and to the grand jury. If the prosecutor had a statement *against him* twice on a charge of conspiracy, he undoubtedly had the same statement in effect *against* the defendants, the co-conspirators. It is idle to speculate whether the jurors were influenced by such a statement. Courts cannot be too careful of extraneous matter injected into the trial of a case before a jury. That any of the jurors may have attached importance to the remark, or conceived such statements made to the prosecuting attorney and grand jury to be important admissions *against* interest, is entirely possible. If any juror was influenced thereby the defendants would be entitled to a new trial. The statement was wholly out of place, and in the very essence of the crime charged, may have been prejudicial to the defendants.

That the defendants were careless in their dealings with Takahashi is certain. He had worked for them for some time, and they may have felt justified in believing his statement that Kosuzume was a citizen. All of their statements may be reconciled with belief in their innocence, although

their carelessness would tend to show their guilt. To my mind their guilt has not been proved to a moral certainty and beyond a reasonable doubt.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 5, 1930, and the following opinion then rendered thereon:

THE COURT.— ▮ Appellants' petition for a rehearing of the judgment of this court rendered and filed May 22, 1930, is denied. The petition for rehearing was filed June 5, 1930. The attention of counsel for petitioners is called to rule 30 of Rules for the Supreme Court and District Courts of Appeal.