[Crim. No. 103. Fourth Appellate District.—July 3, 1930.]

THE PEOPLE, Respondent, v. EARL DYKES, Appellant.

J. C. C. Russell for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, J. W. Ferguson, District Attorney, and Clarence H. Wilson, Deputy District Attorney, for Respondent.

AMES, J., *pro tem.*—Appellant was charged, by an information filed in the Superior Court of Kings County, with the crime of murder, with a prior conviction of a felony. He admitted the prior conviction, and entered a plea of not guilty to the charge of murder. After arraignment, appellant demurred to the information on the ground that the

facts therein stated did not constitute a public offense, and that said information did not substantially conform to the requirements of sections 950, 951 and 952 of the Penal Code. ■ The portion of the information which charged appellant with the crime of murder, was in the following language:

"The District Attorney of the County of Kings hereby accuses Earl Dykes of a felony, to wit: murder, in that on or about the 2nd day of November, 1929, in the County of Kings, State of California, he murdered Henry Hager, and that said Earl Dykes was then and there armed with a deadly weapon, to wit: an automatic pistol." Appellant contends that this information was insufficient in that it did not allege that the act with which he was charged was done with felonious intent.

The form of this information conforms to the provisions of sections 809, 951 and 952 of the Penal Code as those sections were amended in 1927 and 1929 (Stats. 1927, pp. 1043, 1045; Stats. 1929, p. 303), the latter section providing that "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified." An information drawn in the general form prescribed by the foregoing sections of the Penal Code has been held sufficient. (*People* v. *Coen,* 205 Cal. 596 [271 Pac. 1074]; *People* v. *Burdg,* 95 Cal. App. 259 [272 Pac. 816].)

The jury returned a verdict of "guilty of manslaughter."

Appellant contends that the evidence is not sufficient to support the verdict of the jury. The evidence on the part of the People may be summarized as follows:

On the evening of November 2, 1929, Miss Viola Rocke was entertaining about twenty of her friends at a dancing party at her home in the city of Corcoran in Kings County, Her home was located at the southwest corner of the intersection of Hall Avenue and Flory Street in said city, the house facing on Hall Avenue which runs in an easterly and westerly direction and at right angles to Flory Street which extends in a northerly and southerly direction east of, and adjacent to the residence.

The guests at the party were young people whose ages ranged from about eighteen to twenty-three or twenty-four

years. The evening appears to have been spent in dancing to the music of a phonograph. Appellant, according to the testimony of Miss Rocke, was an uninvited guest at the party and arrived at a late hour accompanied by two young men known as the "Adkins Boys." Miss Rocke and several of the guests who were called as witnesses, testified that the conduct of the Adkins boys became offensive, that one of them appeared to be intoxicated and fell on the floor, and that she requested appellant to remove them from the room. Miss Rocke further testified that, prior to that time, the conduct of appellant had not been offensive. Appellant did not comply with this request to remove the Adkins boys from the room, but responded by saying that he was going to shoot the lights out, after which, several young men took hold of his arms and led him outside. Miss Rocke further testified that appellant did not appear to be under the influence of intoxicating liquor, and this testimony is corroborated by at least three other witnesses for the People, but it is at variance with evidence adduced by appellant. She did not see a weapon in his possession, but two other witnesses testified that they saw a revolver in his pocket while he was in the house or while being removed therefrom. About fifteen minutes after appellant had been ejected from her home, Miss Rocke heard the report of a pistol, after which Henry Hager staggered into the room and fell to the floor with a bullet wound in his body.

Hager was removed to a hospital and was attended by Dr. C. T. Rosson. He died about five days after the shooting.

Witness A. E. Odale, another guest at the party, arrived there at about ten-thirty. He testified substantially as follows: That he first encountered appellant standing outside the door of the Rocke home, and that he at that time offered witness and other guests who were there present, a drink of whisky from a flask taken from his pocket. This invitation was accepted by witness and other persons present and appellant joined them in taking a drink, although witness testified that appellant was not intoxicated. While this group, including witness, was standing near the front door, Miss Rocke invited them all into the house. That the conduct of appellant and the Adkins boys became offensive to Miss Rocke and her guests and she said to appellant, "I

have asked you to leave twice already, now I am telling you to go,'' to which appellant replied, ''Oh hell, I will shoot the lights out.''

That this conversation between Miss Rocke and appellant occurred, is substantially corroborated by at least four other witnesses. But it will be noticed that this testimony is at variance with that given by Miss Rocke. Witness further testified that he and one Clarence Sides led appellant to the door, that they pushed him outside and that Sides said that he was the only one present that knew the appellant, that he was his friend and would take care of him. A few moments after the exit of appellant and Sides from the house they were followed by witness and about ten other young men who had been participating in the festivities of the evening. As witness approached Sides and the appellant, who had walked northerly on Flory Street about thirty yards from the Rocke residence, witness told Sides that he would get appellant's gun, to which Sides replied that he already had the gun, an assertion which, as shown by subsequent eventualities, was not true. At the suggestion of witness, Sides started back on Flory Street toward his automobile which was parked on Hall Avenue in front of the Rocke home, for the purpose of taking appellant to his home. While Sides was proceeding toward his car, in response to an inquiry from witness, he informed the latter that he had been unable to get appellant's revolver, and as Sides continued moving toward his car, witness describes the movements of appellant as follows: ''I turned around and Dykes had the gun in his hand. He said, 'Someone get my cap.' Then he said, 'No, we'll all get my cap.' Then he told us all to turn around and go back up the street, and not to stop or look back because if we did he would shoot.'' Other witnesses testified that this command was accompanied by a vile epithet addressed toward the entire group. All present then started in the direction of the intersection of Hall Avenue and Flory Street followed by appellant. At least one witness testified that as appellant followed the other members of the party, his revolver was pointed toward them and that he said, ''I have got the hammer down on you,'' or other similar expressions, indicating that the weapon was cocked preparatory to firing. In the meantime, Sides had driven his car into the intersection of Hall Ave-

nue and Flory Street. This intersection was illuminated by an electric arc-light placed above its approximate center where Sides had parked his car at a point about six or eight feet west of its center with the car facing in an easterly direction. He was there waiting for appellant as witness and other members of the party approached with appellant following them. About the time that they reached Sides' car they turned in a westerly direction and walked a few feet where they were apparently gathered in a group when the fatal shot was fired. When appellant reached the car in which Sides was sitting, he pointed his weapon at the latter and asked him if he was going to take him home. Sides told appellant to get in the car so they could leave. While appellant was standing in this position and about three or four feet north of Sides' automobile, he turned around and started to shoot, discharging four shots from his weapon. At that time witness was standing about six or eight feet from the point where appellant was standing. Other members of the party were in about the same position only further out in the street and a few of them were standing closer to appellant than the witness when the shots were fired. Appellant, at that time, was facing west and apparently did not aim his weapon at any particular individual, but was pointing it toward the crowd of men in the street. After the shooting, appellant walked six or eight feet in a westerly direction behind Sides' car and his revolver dropped from his hand and as he stooped to pick it up, one Earl Buckner hit appellant and a fight ensued in which witness and other members of the group participated and in which appellant was knocked down and became unconscious. At the conclusion of this brawl, witness went into the house and saw deceased with a gunshot wound in his back.

In addition to witness Odale, there were five eye-witnesses to the shooting. We will not attempt to summarize the testimony of these other witnesses. Suffice it to say, however, that, aside from inconsistencies with respect to minor details, their testimony as a whole corroborated that of witness Odale. There is no contention on the part of the People that appellant aimed his weapon at the deceased, or at any other individual member of the party, but that the shots appeared to have been fired at random into the group

of bystanders. It is apparent that deceased was one of the least offensive members of the party, and, except for the testimony of one witness, to the effect that he with other members of the group followed appellant up the street and, with the others, assisted in searching for his weapon, he did not come in contact with the appellant or his friend Sides at any time during the evening.

The appellant did not take the stand in his own behalf, and his friend Sides was the only witness produced by him who was present when the shooting occurred, and who was an actual witness to the events leading up to the homicide. The effect of his testimony was that Odale hit the appellant and knocked him down, that a general fight ensued in which other members of the party participated, that while appellant was standing by the side of Sides' car in the street intersection, the other members of the party approached and made a brutal attack upon him, throwing him to the ground and that, during this *mêlée*, a weapon was discharged by some person unknown to the witness. Sides further testified that at the time of the shooting, and during the early part of the evening, appellant was intoxicated and this testimony is corroborated by other witnesses who testified on behalf of the appellant. He further testified that appellant did not have a weapon in his possession at that time, that he had been intimately acquainted with him for many years, and that during that period appellant had not owned a revolver, and in so far as he knew, had never carried one.

Appellant contends that the shot which took the life of the deceased could not have been fired by appellant while in a standing position, some of the People's witnesses having testified that the flash from the weapon came from close to the ground. One witness testified that the flash appeared to be a distance of about two feet from the ground. Another witness testified that the flash from the weapon came from about the position of the waist-line of appellant while in a standing position. Dr. Rosson, who operated upon the deceased and removed the bullet from his body, testified that the course of the bullet, after entering the body, was approximately straight through, with the exception that it was slightly oblique to the right, that it had penetrated the spleen, the back of the stomach, the mesentery and the colon. It is the appellant's contention that Odale, Buckner

and other members of the party made a brutal and unprovoked assault upon an unarmed man, the incentive for such assault being due to rumors, which had been circulated among the guests at the party, that appellant was a peace officer and attended the party for the purpose of procuring evidence of the violation of prohibition laws, and there is some evidence in the record tending to substantiate this contention.

■ It is apparent from the foregoing summary of the testimony that the evidence was in direct conflict and, while appellant attacks the credibility of the witnesses for the People as coming from a hostile source, the question of determining their credibility was the exclusive province of the jury and cannot be questioned here. ■ It has been held that a person who discharges a weapon into a group of persons without any design to injure any one of that number, may be convicted of murder. In the case of *People* v. *Stein,* 23 Cal. App. 108 [137 Pac. 271, 274], the facts, in this respect, were similar to the instant case, and the court said:

"It does not follow, merely because the defendant might not perhaps have entertained any personal ill-will toward the deceased, that the shooting and killing of the latter was not with the malice essential to the consummation of the crime of murder. The deliberate and unnecessary discharging of a gun into a multitude of people, with an utter disregard of the consequences of the act, whereby human life is destroyed, is murder, and malice will be implied, although the perpetrator of the act had no malice against any particular person of the multitude into which he so fired."

If the discharge of a weapon into a group, under such circumstances, constitutes the crime of murder, manslaughter being the lesser offense, we think the evidence in this case is ample to support the verdict.

■ Appellant assigns many specifications of error in rulings of the trial court on questions involving the admissibility of evidence. In his brief he quotes copiously from portions of the transcript to show the character of the alleged errors. The errors which he assigns are, with few exceptions, supported by neither argument nor authority, and while the court is not required to scrutinize this record in search of error, we have nevertheless examined it and

find therein no ruling which would be prejudicially injurious to the appellant. (*People* v. *Hadley,* 175 Cal. 118 [165 Pac. 442].) Without discussing these alleged erroneous rulings at length, we will advert to a few of them.

Witness Viola Rocke was asked by the district attorney to relate what she said in a conversation between herself and the appellant while she was dancing with witness Odale. The question was objected to on the ground that no foundation had been laid in that the names of the persons present had not been disclosed. But this was not an impeaching question, and it has been held unnecessary to lay the foundation prescribed by sections 2051, 2052 of the Code of Civil Procedure, unless the evidence sought to be elicited is of an impeaching character. (*People* v. *Ferrera,* 31 Cal. App. 1 [159 Pac. 621]; *People* v. *Morales,* 77 Cal. App. 483 [247 Pac. 221]; *People* v. *Davis,* 92 Cal. App. 547; [268 Pac. 674]; *People* v. *Sprado,* 72 Cal. App. 582 [237 Pac. 1087].)

The court refused to strike out an answer of witness Viola Rocke, on motion of counsel for appellant, while under direct examination by a special prosecuting attorney, upon the ground that her answer was not responsive to the question. Appellant assigns such refusal as error. But it has become well established in this state that an objection that an answer is not responsive can be made only by the party who asks the question, if the answer is otherwise admissible. (*People* v. *Sieber,* 201 Cal. 341 [257 Pac. 64]; *Hirshfield* v. *Dana,* 193 Cal. 142 [223 Pac. 451].)

On cross-examination, witness Odale was asked if he had been convicted of a felony, to which he replied that he had. On redirect examination, the People, over the objection of the appellant, elicited the fact that at the time of such conviction he was a lad of nineteen years of age and had been punished by commitment to the Preston School of Industry at Ione. This fact is not prejudicial to appellant. (*People* v. *Maloney,* 92 Cal. App. 371 [268 Pac. 472]; *People* v. *Goodwin,* 105 Cal. App. 122 [286 Pac. 1087].)

Appellant next assigns numerous statements made by the district attorney and the special prosecutor in their argument to the jury as prejudicial error. He criticises several statements made in argument upon the ground that

they contained an unwarranted expression of opinion of the district atttorney and the special prosecutor as to the guilt of the defendant. One of the statements so criticised is as follows:

"Now, then, I have told you and believe this morning that under the evidence in this case the jury must find the defendant guilty of either first degree murder, or second degree murder. Of course that is my view of the evidence in this case."

Another such statement contained in the argument of the district attorney is as follows:

"Now it seems to me that from the evidence in this case the defendant must be found guilty of one of two crimes, murder in the first degree, or murder in the second degree, because I don't believe that the circumstances here show that the defendant could be guilty of manslaughter. I think under no view of the testimony here the defendant could be acquitted."

Appellant cites and relies upon the case of *People* v. *Edgar,* 34 Cal. App. 459 [167 Pac. 891, 894]. In that case a judgment of conviction was reversed by reason of prejudicial statements made by the district attorney in his argument to the jury, but it appears that the testimony of the prosecutrix in that case was inherently improbable, that the district attorney made an address of an inflammatory character and the opinion of the defendant's guilt which he expresses in his argument was not, and did not, purport to be based upon the evidence in the case. But the court said:

"He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged."

And it is held by many decisions in this state that the district attorney may express his opinion of the defendant's guilt in his argument to the jury, provided such opinion is based upon the evidence adduced. In the instant case the district attorney and the special prosecutor presented the facts adduced from the evidence and there was no impropriety in drawing this deduction from such evidence. (*People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143]; *People* v. *Kelly,* 69 Cal. App. 558 [231 Pac. 767].)

■ Appellant also excepts to the following language used by the district attorney in his opening argument:

"Now, to have murder in either degree there must be present, malice, but for murder in the second degree you do not have to find deliberation and premeditation. To make first degree murder you have to find deliberation and premeditation in addition to malice."

By the use of this language, it is apparent that the district attorney was calling the jury's attention to the distinction between murder in the first degree and murder in the second degree, that such distinction, in so far as it goes, was not challenged by appellant. That counsel may, in his argument, state what the law is and apply the law to the facts in the case is well established in California, provided, of course, the statement of what he considers the law to be is correct. (*People* v. *Treadwell*, 69 Cal. 226 [10 Pac. 502]; *People* v. *Molina*, 126 Cal. 505 [59 Pac. 34]; 8 Cal. Jur. 270.)

■ During the argument of the special prosecutor he used the following language, to which appellant excepts:

"Is it a crime, gentlemen of the jury, if the gray-haired mother of the dead Henry Hager, the brothers of the deceased Henry Hager, wish to go down in their pockets, or perchance to the bank and borrow the money to pay someone to assist in the prosecution of the case wherein the People are seeking redress against a man whom they believe killed their son and brother? Is it a crime?"

Appellant assigned the foregoing statement of counsel as prejudicial misconduct but did not ask the court to instruct the jury to disregard it. We believe that the use of this language by the special prosecutor was highly improper, it injected into the case an element not founded upon evidence and which could have no possible relation to the issue pending before the jury, and had a request been made for a proper instruction to the jury, we have no doubt but what the court would have given it. It was said in the case of *People* v. *Nakis*, 184 Cal. 105 [193 Pac. 92, 96], that:

"Where the error is such that its effect would be obviated by an instruction to the jury to disregard it and no such aid is invoked, the error cannot be complained of on appeal." (*People* v. *Ong Mon Foo*, 182 Cal. 697 [189 Pac. 690]; *People* v. *Shears*, 133 Cal. 154 [65 Pac. 295].)

 Exception is made to the following language used by the special prosecutor in his argument:

"Oh, yes, I want to say something about the argument of Mr. Clement, I believe it was to show you that the witness for the prosecution undoubtedly was perjuring himself, undoubtedly he was—that was Mr. Buckner, I believe, who saw this gun in defendant's pocket. Nothing at all was asked or said about the possibility of a handkerchief or a package of cigarettes or even a bottle of whiskey—or anything else—."

This language is objectionable to appellant because it appears to be a comment upon the failure of appellant to interrogate certain witnesses on the subject matter mentioned in the foregoing argument. But it has been held that it is not error for a prosecutor to comment upon the failure of a defendant to adduce certain evidence and draw the conclusion therefrom that such evidence might be injurious to such defendant. (*People* v. *Ye Foo,* 4 Cal. App. 730 [89 Pac. 450]; *People* v. *Ruef,* 14 Cal. App. 576 [114 Pac. 48, 54].)

 Appellant assigns prejudicial error to other statements made by the district attorney and the special prosecutor in their argument to the jury, but failed to request the necessary instruction. In our opinion the errors complained of would have been cured by a timely instruction from the court, but in the absence of a request for such instruction by appellant, the errors cannot be complained of here. (*People* v. *Ong Mon Foo, supra; People* v. *Shears, supra.*)

 Appellant complains of the court's refusal to give four separate instructions on the doctrine of reasonable doubt. The language of some of these instructions on that subject is intermingled with instructions announcing the rule as to burden of proof, and the presumption of innocence. However, the court not only instructed the jury on the doctrine of reasonable doubt in the language of section 1096 of the Penal Code, which alone would have been sufficient (*People* v. *Knocke,* 94 Cal. App. 55 [270 Pac. 468]), but in other instructions reiterated the rule as enacted in that section. The court fully instructed the jury that the burden of proof rested upon the People and that the presumption of innocence must be overcome by evidence of the

prosecution, and that the prosecution must prove the guilt of the defendant to a moral certainty beyond a reasonable doubt. The unnecessary repetition of these principles in varying forms is not required, and the court's failure to do so was not error.

In its instructions the court defined the various degrees of murder and included in said instructions the provisions of section 189 of the Penal Code, which is as follows:

"All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree; and all other kinds of murders are of the second degree."

Appellant complains that this instruction was prejudicial to him because it sets forth principles of law which are not applicable to the facts in the case. But, assuming that this instruction was error, such error was cured by the verdict of the jury which found the defendant guilty of manslaughter and found against the charge of murder. (*People* v. *Boling,* 83 Cal. 380 [23 Pac. 421]; *People* v. *O'Neal,* 67 Cal. 378 [7 Pac. 790]; *People* v. *Jurado,* 56 Cal. App. 481 [205 Pac. 696]; 13 Cal. Jur. 667.)

Other instructions requested by appellant and refused by the court were stock instructions of a cautionary character advising the jury as to its duty in weighing the evidence in an impartial manner without prejudice or bias as between the parties to the action, and were free from error and the matter already having been covered the refusal thereof was not error.

The judgment and order denying motion for new trial are affirmed.

Cary, P. J., and Marks, J., concurred.