THE STATE OF IOWA, Appellee, v. O. P. FARRELL, Appellant.

1. **Evidence**: WITNESS' BELIEF AS TO GUILT OF ACCUSED : WAIVER OF OBJECTION. Upon the cross-examination of a witness for the state as to his previous declarations concerning the guilt of the accused, he testified, that he had stated that he believed defendant guilty of forgery and passing counterfeit paper. Objection to the answer was made by the defendant, but the objection was not ruled upon, and no motion was made to strike the answer from the record. Upon redirect examination, for the purpose of getting a full statement of what the witness had said, he was

asked to repeat said declaration, and did so against the objection of the defendant. *Held*, that the defendant was not in a position to complain of the admission of the objectionable statement.

2. ——: REPUTATION: CROSS-EXAMINATION: ERROR WITHOUT PREJUDICE. A witness having testified to the defendant's good reputation in the place of his former residence, he was inquired of on cross-examination as to what was his reputation where he then resided, and answered, that he had never heard 'what his general moral character was since his removal to such place, but he had heard citizens speak of his becoming intoxicated. *Held*, that the defendant was not prejudiced either by the extension of the inquiry as to his reputation in places not inquired of on direct examination, nor by testimony as to his habits of intoxication.

3. ——: ——: ——. A witness for the state, having testified that he was acquainted with the general moral character of the defendant, stated on cross-examination, "I am able to judge of a man's character by his business dealings, and what I know of him. I pay attention to people's character only as I deal with them." *Held*, that these statements must be presumed to have been given in answer to questions as to the personal opinion of the witness, and was not evidence that his testimony as to the defendant's general moral character was a merely personal opinion.

4. ——: ——: ——. Personal interest in the result of a prosecution will not disqualify one as a witness concerning the general moral character of a party thereto.

5. Forgery: FALSELY REPRESENTING A SIGNATURE TO BE THAT OF ANOTHER: VERDICT. The defendant was charged with having "in his possession a false and forged promissory note, knowing the same to be false and forged," which he "did falsely * * * utter and publish as true and pass to K. * * * as the promissory note of himself and wife, M. F., well knowing that the said signature of his wife, M. F., was false and forged, * * * with intent then and there to defraud," etc. The evidence showed that the defendant having agreed to give his promissory note to K., with his wife's name thereto as security, took the note to his house, and there had a daughter of the same name as the wife sign her own name to it. The note thus signed was delivered to K. by the defendant as containing the signature of his wife, and was so accepted by K. in lieu of other security held by him, and which he surrendered. *Held*, that the evidence sustained the allegations of the indictment.

*Appeal from Hardin District Court.*—HON. D. R. HINDMAN, Judge.

FRIDAY, MAY 22, 1891.

INDICTMENT for uttering and publishing a promissory note, knowing the same to be false and forged, with intent to defraud. There was a verdict of guilty and a judgment thereon, from which the defendant appeals. *Affirmed.*

*J. H. Scales*, for appellant.

*H. L. Huff* and *John Y. Stone*, Attorney General, for the State.

GRANGER, J.—The main facts upon which reliance is placed to sustain a conviction of the alleged offense are that the defendant was indebted to one Kasch for certain billiard tables, fixtures and rent, for which Kasch held as security certr in notes, and had commenced a suit to enforce a landlord's attachment, when a settlement was agreed upon by which the defendant was to give to Kasch his note for two hundred and thirty-nine dollars and seventy cents, with his wife's name thereto, as security, due in six months. The note was written and signed by the defendant. The defendant then took it to go to his home to obtain the signature of his wife. Her christian name is Margaret, and the defendant has a daughter of the same name. The note was presented to the daughter with a direction to sign it, which she did. The note, thus signed, was taken back to the office in which it was written, and delivered to Kasch, as containing the signature of the defendant's wife, who accepted it and surrendered the security he held. The note thus delivered to Kasch is the one referred to in the indictment.

I. A Mr. Baker was a witness for the state, and on a redirect examination he said that he had some time stated as follows: "That I believe Mr. Farrell guilty of the crime in the matter of forgery or passing forged paper, and that I should do what I could to prosecute him." The witness Baker is an attorney, and filed the information at the commencement of this proceeding. This

1. EVIDENCE: witness' belief as to guilt of accused: waiver of objection.

statement of Baker as to his own belief was admitted
against the objection of the defendant.   On the cross-
examination, as we gather from the record, the witness
was inquired of as to what language he had used in
regard to the offense and the prosecution, and among
other things he said :   "If you will let me explain, I
will say that .I made such a statement as this :   That I
believe Mr. Farrell was guilty of forgery and passing
counterfeit paper."   After the answer is an objection
by the defendant, but without a ruling, and we assume
that a ruling was waived, and there was no motion to
strike the answer from the record.   The objectionable
statement is thus in the record at the instance of the
defendant, or at least by his assent.   The redirect
examination seems to have been only to get the full
statement of what the witness had said.   Under the
circumstances the appellant has no just grounds of
complaint.

II.   The defendant used one White as a witness,
who said he had known the defendant at Alden for

2. ——: reputa-
tion: cross-
examination:
error without
prejudice.

twenty years, and that his general reputa-
tion for honesty and fair dealing was good.
On cross-examination he was asked :   "Do
you know what his general reputation has
been since then at Iowa Falls,—his general moral char-
acter ? "   He answered that he had never heard what
his general moral character was since he moved there,
but that he heard citizens speak of his acts, and the
conclusion was that since the commencement of the
action he had heard them speak of "his becoming intox-
icated."   The appellant's claim in this respect is that his
inquiries of the witness were only as to reputation for
honesty and fair dealing during the time he lived at
Alden.   It is urged that the cross-examination should
have' been limited as were the questions in the examin-
ation in chief.   Without assenting to the claims fully,
it is sufficient to say that no prejudice resulted, as the
witness knew nothing of a general reputation at Iowa
Falls.   And as to the acts of intoxication it is urged by
the appellant in argument as against a criminal intent

that the defendant was in the habit of becoming intoxicated; and in this respect it is said "that nearly a half century of useful and reputable life is interspersed only by habits of the cups at intervals of years apart,—a constitutional and hereditary failing." In view of this there could have been no prejudice in the statement of the witness.

III.    George F. Baker was called by the state, and said he was acquainted with the general moral character of the defendant at Iowa Falls, and that he should say it was bad. On cross-examination he said: "I am able to judge of a man's character by his business dealings, and what I know of him. I pay attention to people's character only as I deal with them." The appellant says that because of these statements it appears that the testimony of the witness is a "mere personal opinion," and not competent. But these statements must have been in answer to questions relative to his personal opinions, and it does not appear that his answers on the direct examination were based on such opinions, but on his knowledge of general moral character. The questions on cross-examination led him to give his personal estimate of the man; those on the direct to give his knowledge as to his general moral character, and his further cross-examination shows that he had knowledge in that respect.

IV.    It is urged that it does not appear that the knowledge of either of the witnesses for the state, on the question of the moral character of the defendant, was sufficient to admit their testimony. The usual foundation as to knowledge of character was laid on the direct examination, and conceding that on cross-examination they were shown to be interested, as they were, it would not justify the court in striking their testimony from the record. The value of the testimony, under such circumstances, was for the jury.

There is a general complaint that "the instructions are inapplicable to the evidence upon which the

prosecution seeks to convict appellant," and that "they are inconsistent with themselves." We regret that we are not more definitely informed as to the particulars of such complaint. The instructions seem to us to properly state the law under the evidence, and are fair to the defendant.

V. It is also said that the evidence admissible under the indictment tends only to support the crime

5. FORGERY: falsely representing a signature to be that of another: verdict.

of cheating by false pretenses. The indictment charges that the defendant "had in his possession a false and forged promissory note, knowing the same to be false and forged, and did falsely * * * utter and publish as true and pass to Ernst Kasch the said promissory note as the promissory note of himself and his wife, Margaret Farrell, well knowing that the said signature of his wife, Margaret Farrell, thereto was false and forged," * * * with intent then and there to defraud," etc. The evidence supports the facts as stated at the commencement of the opinion, and very clearly shows that the defendant obtained the signature written by his daughter intending to falsely use it as that of his wife. That made the instrument false. That he uttered and published it as true, knowing it to be false, with intent to defraud, is not open to serious question in the case. To say the testimony would support a charge of obtaining property by false pretenses would not necessarily be a concession that it would not sustain the allegations of the indictment.

We think the verdict has ample support in the evidence, and the judgment is AFFIRMED.