[Crim. No. 1145. Third Appellate District.—February 20, 1931.]

THE PEOPLE, Respondent, v. JOSEPH MYRICK, Appellant.

C. I. Bennington for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The defendant appeals from a judgment of conviction based upon two counts in an information, which counts are in the following words and figures, to wit:

"Count I.

"In the Superior Court of the State of California, in and for the county of Butte, the 28th day of July, 1930. The said Joseph Myrick is accused by the district attorney of Butte county, by this information, found this 28th day of July, 1930, of the crime of grand theft, a felony, committed as follows: The said Joseph Myrick did on or about the 1st day of October, 1929, at Butte county, and State of California, and before the filing of this information wrongfully, wilfully and feloniously take one Jersey cow branded BS on the right shoulder and with ear tag with No. 4 on the right ear. Said Jersey cow then and there being the property of the Pacific Finance Company of Los Angeles, contrary to the form, force and effect of the statute in such cases made

and provided, and against the peace and dignity of The People of the State of California.

## "Count II.

"In the Superior Court of the State of California, in and for the county of Butte, the 28th day of July, 1930. The said Joseph Myrick is accused by the district attorney of Butte county, by this information, found this 28th day of July, 1930, of the crime of grand theft, a felony, committed as follows: The said Joseph Myrick did, on or about the 5th day of April, 1930, at Butte county, and State of California, and before the filing of this information, wrongfully, wilfully, unlawfully and feloniously take certain personal property of Victor G. Strain, consisting of one 1930 Buick sedan automobile, engine number 2483927, 1930 license No. 2D9210, of the value of $1,100.00, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of The People of the State of California."

The information contained three counts, but as the defendant was acquitted on the third count, no attention need be given thereto.

The first contention by the appellant is to the effect that neither count I nor count II of the information charges a public offense. As no demurrer was filed by the appellant, only the bare question as to whether a public offense is stated can be considered. While neither count does state fully all the particulars set forth in section 484 of the Penal Code, relative to grand theft and the offenses included under that designation, we think, in the absence of a demurrer, the counts are good. Each count charges the defendant with grand theft, a felony, and then particularizes the acts upon which the crime of theft is based without again alleging that the acts themselves constitute the crime of grand theft. Under section 952 of the Penal Code, as amended in 1929 (Stats. 1929, p. 303), no particular words are necessary. That section reads: "In charging an offense, each count shall contain and shall be sufficient if it contains in substance a statement that the accused has committed some public offense therein specified. . . . In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another."

The first count charges that the defendant wrongfully, wilfully and feloniously took the property of another. The second count charges that the defendant wrongfully, wilfully, unlawfully and feloniously took the property of another. Thus, the second count uses all the words necessary to comply with the provisions of section 952 of the Penal Code, and while the word "unlawfully" does not appear in the first count, it does charge the defendant with wilfully and feloniously and wrongfully taking the property of another, which fully advised the defendant as to the offense with which he was charged. Very similar informations have been upheld by this court. (*People* v. *Campbell,* 89 Cal. App. 646 [265 Pac. 364]; *People* v. *Plum,* 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322].)

A long list of assignments of error is set forth in the appellant's brief, but as the pages of the transcript are not referred to in many instances, and the alleged errors are not set forth either in substance or in the form in which the errors are alleged to have taken place, we do not feel that we are called upon to search through a record of some 500 pages to ascertain whether the assertions of the appellant's brief are or are not well founded. It has been frequently held that where an appellant sets forth no part of the record, and does not refer to the pages of the record to support his contentions, the court will not burden itself with an examination of the record to ascertain if error has been committed.

In the case of *People* v. *Clark,* 183 Cal. 677 [192 Pac. 521], quoting from pages 686 and 687, we find the following: "Appellant's third assignment of error is 'all of the rulings of the court overruling the objections of his counsel, or sustaining the objections of the district attorney, together with the giving of the instructions as they appear in the record'. No portions of the record are referred to or quoted, no authorities are cited or discussed, and, indeed, appellant does not specify wherein the court erred in the giving of the instructions or in the rulings of the evidence. We do not feel called upon to consider points so presented." (Citing *Gray* v. *Walker,* 157 Cal. 381 [108 Pac. 278]; *Dore* v. *Southern Pac. Co.,* 163 Cal. 182 [124 Pac. 817]; *Born* v. *Castle,* 175 Cal. 680 [167 Pac. 138]; *Scott* v. *Times-Mirror*

*Co.,* 181 Cal. 345 [12 A. L. R. 1007, 184 Pac. 672]. See, also, *People* v. *Lloyd,* 97 Cal. App. 664 [275 Pac. 1010].)

In *People* v. *Morales,* 77 Cal. App. 483 [247 Pac. 221, 222], in considering assignments of error such as we have presented in the instant case, this court, speaking through Justice Hart, said: "The Appellate Courts are not supposed to perform the work of counsel who present cases thereto for review. The rule thus stated and to which the Appellate Courts of this State almost uniformly adhere, is explained as follows in *People* v. *McLean,* 135 Cal. 306, 309 [67 Pac. 770, 771], 'We again repeat what we have said before, that we will not examine alleged errors presented in this way. It is due to this court, from the members of the bar, to point out clearly and concisely the rulings complained of as erroneous and the reasons why they are so, with reference to authorities, if any. In case counsel will not take the trouble to do so, we shall deem the matter as of not sufficient importance to merit an opinion.' " (Citing a number of authorities.)

In the instances where the pages of the transcript are referred to, no reasons are presented showing why such alleged errors are prejudicial. We will cite a few instances: "The court erred further in his remarks before the jury on pages 275 and 276 of the testimony transcribed, to show what money was paid to the defendant." And, further: "It is not competent for the prosecution to prove the commission of independent crimes committed by defendant, the evidence of which has no tendency to prove some material fact in connection with the offense charged." Our attention has not been called to any portion of the transcript where such testimony was admitted, nor has anything been set forth to show, if such testimony was admitted, that it was not competent to prove some issue in the case. The specifications of error, in the argument of counsel, do call our attention to alleged erroneous instructions given to the jury, which we will consider after first stating the substance of what the testimony shows.

The record shows that the defendant and a man by the name of Allen were engaged in dealing in cattle; that some time prior to October, 1929, E. A. Allen of Chico entered into a conditional sales contract with the defendant for the sale of some thirty or forty head of cattle. Upon this con-

tract the defendant made a small cash payment. The contract provided that Allen was to retain title to the cattle until they were all paid for. Title to the cattle in question never passed from Allen to the defendant. After the defendant obtained possession of the cattle included within the conditional sales contract, he sold one cow to a man by the name of S. S. Peters of Gridley, who paid him therefor the sum of $100. This is in substance what is included in the testimony relative to the first count. Thereafter, the record shows that the defendant sold, on a conditional contract of sale, to one Ramsey, ten head of the cattle he had obtained from E. A. Allen; that the defendant represented to Ramsey that he owned the cattle. A conditional sales contract was entered into between the defendant and Ramsey, whereby Ramsey agreed to pay the defendant a certain sum of money for said cattle, the balance remaining unpaid on the contract being the sum of about $1100. The record shows that some time before the contract of sale and purchase of the cattle in question was entered into between the defendant and Ramsey, Mrs. Myrick, the wife of the defendant, had purchased from a man by the name of Strain a Buick automobile, upon which there was still owing the sum of $1100. After the execution of the conditional contract of sale for the cattle just referred to, the defendant assigned his interest in the contract to Strain, in full payment of the balance due upon the automobile, and obtained the "pink slip" therefor. Shortly after these occurrences, the defendant left the county of Butte, and was thereafter apprehended in the state of Oklahoma. The testimony introduced on the part of the People was to the effect that Myrick had no title to the property; that his sale thereof was fraudulent, and that by reason of these transactions he obtained possession of the title to the Buick automobile. In addition to what we have stated, the testimony shows that the defendant was loaned the sum of $800 to plant certain crops, and that the money loaned was not used for that purpose, the defendant and his wife having departed from the county of Butte shortly after obtaining title to the automobile and the $800 referred to.

On the part of the defendant considerable testimony was introduced relative to the transactions had between E. A. Allen and the defendant, to the effect that the ten head of

cattle mentioned and included in the contract of sale executed between the defendant and Ramsey, were not any of the cattle included in the conditional contract of sale entered into between Allen and the defendant. On the part of the prosecution, again, there was testimony introduced to the effect that they were the same cattle, description and markings being testified to. This, of course, was a question of fact for the jury. ▮ It is sufficient to say that a *résumé* of the testimony shows that if the jury believed the testimony introduced on the part of the People, it is amply sufficient to remove all reasonable doubt as to the defendant's guilt. With this in view we will now consider the two instructions alleged to be erroneous.

▮ One instruction relates to count number 1, and one instruction relates to count number 2. The setting forth of the instruction relative to count number 1 will be sufficient, as the instruction as to count number 2 is subject to the same objections. The instruction as to count number 1 reads: ''If you believe from the evidence solely produced here in the court room before you, and beyond a reasonable doubt, that on or about the 1st day of October, 1929, at Butte county, and State of California, and before the filing of this information that the defendant Joseph Myrick did take one Jersey cow branded BS on the right shoulder, and with ear tag number 4 on the right ear, and convert the same to his own use, and that said Jersey cow was then and there the property of the Pacific Finance Company of Los Angeles, and with the intent then and there to deprive the alleged owner of its property, then you should find the defendant guilty of the charge alleged and made against him in count 1 of the information. Otherwise, you will find him not guilty as to the charge made in said count.'' It requires no argument to show that this instruction is erroneous, and should not have been given in the language in which it is couched. By its terms it would permit the finding of the defendant guilty upon acts not constituting a criminal offense. The instruction given in relation to count number 2 is likewise as unquestionably erroneous.

Following these instructions, however, the court did read to the jury a portion of section 484 of the Penal Code, to wit: ''Every person who shall feloniously steal, take, carry, lead or drive away the personal property of another, or who

shall fraudulently appropriate property which has been entrusted to him, or shall knowingly or designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, is guilty of theft.''

In the preliminary instructions given to the jury the court set forth counts 1 and 2, and then said: ''To this information, upon his arraignment in this court, the defendant entered a plea of not guilty to each of said counts, which plea puts in issue every material allegation of the information and charge, and it devolves upon the prosecution to establish to your satisfaction, beyond a reasonable doubt, that he, the defendant, is guilty of the crimes, or of any one of them charged against him in the information.'' From this we conclude that the jury, as reasonable men, would understand, and did understand, that the defendant was charged with grand theft and that grand theft meant wilfully and feloniously depriving another of his property, and that the acts must be so performed as to constitute a felony, before the defendant could be found guilty, and not that the simple taking of property belonging to another constituted the crime of grand theft. Under such circumstances, section 4½ of article VI of the Constitution is applicable, where it provides that no new trial shall be granted on the grounds of misdirection of the jury, unless the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.

The text found in 8 California Jurisprudence, page 628, we think states the rule that should govern our decision here. We quote as follows: ''While formerly an erroneous instruction was presumed to be injurious unless the contrary clearly appeared, under the present state of the California law a judgment will not be reversed because of an error in misdirecting the jury, unless in the opinion of the appellate court, after an examination of the entire case, the error resulted in a miscarriage of justice. Hence, a judgment will not be reversed because of an error in instructions if the error can in no way prejudice the rights of the defendant, if it appears that the result would have been the same if the erroneous instruction had not been given, or if the error was cured by the evidence, or by other instructions, or by the verdict. Instructions which are calculated to mislead the jury under the circumstances of the

case are erroneous and require a reversal, if they result in a miscarriage of justice. But mere uncertainty or lack of perspicuity which cannot have the effect of misleading the jury will not authorize a reversal, especially when the uncertainty is removed by other instructions."

As we have stated, a review of the testimony leads to the conclusion that the jury was not misled to the prejudice of the appellant. We may here state that we have read the entire transcript, notwithstanding that under the circumstances we were not required to do so, and have found nothing which would jusify a reversal of the judgment, nor do we find anything that requires further special consideration.

The judgment is affirmed.