[Crim. No. 5167. Second Dist., Div. Two. Oct. 4, 1954.]

THE PEOPLE, Respondent, v. ROY NESSETH, Appellant.

Minsky & Garber for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

McCOMB, J.—From an order denying defendant's motion for a new trial after being found guilty of one count of grand theft and two counts of forgery, defendant appeals.

Defendant urges that *there was not substantial evidence to sustain the judgments of guilty on any count.* This contention is untenable, as will appear from the evidence hereinafter set forth in support of each count of which defendant was convicted.

I

*Count pertaining to the Lackey Grand Theft.*

There is no merit in defendant's contentions that (a) there was no evidence that he intended to defraud the Lackeys; (b) the evidence shows he did not in fact defraud the Lackeys; (c) there were no false pretenses used; (d) the Lackeys did not rely on any false pretenses; (e) the evidence of false pretenses was not sufficient to fulfill the requirements of Penal Code section 1110.[1]

---

[1]Penal Code, section 1110, reads as follows:
"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the de-

■ The elements of the crime of grand theft on the theory of obtaining money by false pretenses are: (1) An intent to defraud; (2) an actual fraud committed; (3) the use of false pretenses to perpetrate the fraud; and (4) reliance upon the fraudulent representations in parting with the money or other property. (*People* v. *Frankfort*, 114 Cal.App.2d 680, 697 [251 P.2d 401].)

■ The record discloses that the Lackeys had a 1951 Pontiac; they talked to defendant at the Ran Boys used car lot and Mr. Lackey asked defendant how much he would require to exchange a 1953 model for the 1951 car; defendant then asked Mr. Lackey what he would give with his car for the 1953 model to which Mr. Lackey replied he would give $1,100; defendant said there would be a $96 sales tax which would make the difference $1,196 and the Lackeys told him they would pay the $96 sales tax; Mr. Lackey refused to sign a contract prepared by Mr. Reading which showed the unpaid balance as $1,700 and defendant stated a mistake had been made; Mr. Lackey again said, "Well, $1196.00 was all that I was to give you difference," to which defendant said "okay."

Defendant then put certain figures in a form of used car purchase order, as set forth above, leaving the spaces blank after unpaid balance, total unpaid balance, contract balance and time price. Thereafter the Lackeys signed the document. About a week later Mr. Lackey was given a copy of the contract and found that $1,800 had been inserted as the unpaid balance and the total unpaid balance as $1,800.

From this evidence the trier of fact could reasonably infer that defendant told Mr. Lackey he could have the 1953 car for his 1951 car and $1,196. From defendant's act of then filling figures into a form of purchase order, which figures included $96 as sales tax, a figure which had been previously mentioned as such tax, and $1,196, which had been mentioned as the difference the Lackeys would pay, it was reasonable to find that defendant was thereby representing that the purchase order was for the purchase of the 1953 car for the

fendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances; but this section does not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying, or receiving any money or property.''

1951 car and $1,196, pursuant to his statement. This representation was false, as is shown by the figures on the purchase order at that time which, by subtraction, showed that the difference in price was $1,700, although that figure was not written in.

The intent of defendant to defraud the Lackeys of the difference between $1,196 and $1,700 may be inferred from the evidence that defendant told them that a payment of $1,196 would be ''okay'' and then partially filled in the purchase order with figures, some of which had been mentioned by the Lackeys as amounts that they would be willing to pay, but which figures in the spaces in which they were inserted in the purchase order resulted by subtraction in requiring payment of a difference of $1,700, without placing that figure on the purchase order before having the Lackeys sign it.

The Lackeys relied on the false representations of defendant that he was selling them the 1953 car for their 1951 car and $1,196 as is shown by the evidence that they refused to sign a previously prepared contract to buy the car, which contract showed the balance due to be $1,700, and that at such time they told defendant they would only pay $1,196 difference, and when he said that was ''okay'' they signed the contract, thereby parting with their property.

Each of the elements of the crime of grand theft by false pretenses was thus established by the evidence and the inferences fairly drawn therefrom. There is no merit in defendant's contention that since the Lackeys signed the purchase order a finding that he was guilty of grand theft, or that he misrepresented to them the obligations of the contract is not supportable. The space for the unpaid balance was not filled in and although if the Lackeys had done some arithmetic they might have discovered that the purchase order required an amount different from that to which it appeared defendant was agreeing, there is a total absence of any evidence that they did make such calculation. The evidence on the other hand shows that they relied upon defendant's statement that it was ''okay'' in reply to Mr. Lackey's statement that he would pay only $1,196.

Mr. Justice Fox' statement in *People* v. *Frankfort*, 114 Cal.App.2d 680, 700 [251 P.2d 401], is here appropriate: ''. . . The fact that the documents were read would not make it inherently improbable that other, different and additional representations were made by the salesmen.

"Defendants insist these contracts insulate them from this prosecution because they contain the statement that they constitute the entire agreement between the parties, that the Spa Corporation is not bound by any representations outside the contract, that no salesman is authorized to make any additional or contrary representations, and that the club member has read and understands what he is signing. ▄ The simple answer to this argument is that 'The People prosecuting for a crime committed in relation to a contract are not parties to the contract and are not bound by it. They are at liberty in such a prosecution to show the true nature of the transaction.' . . . The practical wisdom of the rule is illustrated in this case. Upon at least three occasions prospective purchasers complained to defendant Nudelman that the written agreement did not seem to conform to what they had been told, whereupon he assured each party, in effect, that everything would be taken care of and he need not worry."

▄ Defendant's argument is also unsound that in the eyes of the law married persons are considered as one person and that therefore there were not two witnesses to the transaction. Code of Civil Procedure, section 1880, makes incompetent as witnesses those who are of unsound mind, some children under 10 years of age, and certain parties in actions against estates. Section 1881 of the same code provides for the incompetency of witnesses as to certain privileged communications. Defendant does not contend that either Mr. Lackey or Mrs. Lackey comes within any of these exceptions to section 1879[2] of the Code of Civil Procedure and it does not appear that either was in any way incompetent as a witness. Penal Code, section 1110, requires only the testimony of two witnesses concerning the false pretenses. Both Mr. and Mrs. Lackey were competent as witnesses within Code of Civil Procedure, section 1879, and testified concerning the false pretenses. That husband and wife in California are recognized as having separate existences has been held in

---

[2]Code of Civil Procedure, section 1879, provides:

"All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses. Therefore, neither parties nor other persons who have an interest in the event of an action or proceding are excluded; nor those who have been convicted of a crime; nor persons on account of their opinions on matters of religious belief; although, in every case the credibility of the witness may be drawn in question, as provided in section eighteen hundred forty-seven.

*Wilson* v. *Wilson,* 36 Cal. 447, 453 [95 Am.Dec. 194]. (See also *In re Kellog,* 41 Cal.App.2d 833 [107 P.2d 964].)

II

*The Count Pertaining to the Lackey Forgery.*

■ Defendant asked Mr. Lackey what he would give as the difference between Mr. Lackey's 1951 car and the 1953 car which he liked. Mr. Lackey said he would give $1,100 as the difference and defendant said that the $96 sales tax would make $1,196 difference, which Mr. Lackey said he would pay. A form of purchase order was then prepared by Mr. Reading, which specified the difference as $1,700. This contract Mr. Lackey refused to sign. Defendant then said that a mistake had been made and that he would work out a deal. Mr. Lackey reiterated that $1,196 was all that he was to give defendant as the difference and defendant said that was "okay." Defendant then partially filled out a purchase order contract, as set forth above, which the Lackeys signed. When they saw the purchase order a week later they discovered that $1,800 had been inserted as the unpaid balance, $1,800 as the total unpaid balance, $293.70 as the time price, and $2,093.70 as the contract balance.

From this evidence the trier of fact reasonably found that Mr. and Mrs. Lackey believed that they were signing a paper which would obligate them to pay only $1,196, and that they intended only to execute a document having this effect. The difference between the papers they thought they were signing and the paper they actually signed, which obligated them to pay $1,700 when the figures which were on the document when they signed it were subtracted and multiplied, was a material difference. From the foregoing evidence the trial judge properly found that the Lackeys were induced to sign the document by the trick and device of defendant, who appeared to be agreeing to the obligation of $1,196 only.

■ The fact that defendant testified that he did not insert the $1,800 is not conclusive. The trier of fact had an opportunity to examine that figure and compare it with other figures on the document which defendant had testified he had written, and was entitled to make his own deductions from such examination and comparison. (*People* v. *Gayle,* 202 Cal. 159, 163 [259 P. 750].)

That the foregoing facts constitute forgery is evident. Section 470 of the Penal Code provides in part as follows: "Every person who, with intent to defraud, . . . falsely

makes, alters, forges, or counterfeits, any . . . writing obligatory, . . . contract . . . is guilty of forgery.''

█ That the correct rule is that the procuring of a genuine signature to an instrument by fraudulent representations constitutes forgery is supported by these well reasoned authorities: *State* v. *Shurtliff,* 18 Me. 368; *Commission* v. *Foster,* 114 Mass. 311 [19 Am.Rep. 353]; *Gregory* v. *State,* 26 Ohio St. 510 [20 Am.Rep. 774]; *State* v. *Farrell,* 82 Iowa 553 [48 N.W. 940]; *Williams* v. *State,* 213 Ala. 1 [104 So. 40]; *Williams* v. *State,* 20 Ala.App. 337 [104 So. 38]; *Horvath* v. *National Mortg. Co.,* 238 Mich. 354 [213 N.W. 202, 56 A.L.R. 578]; *Turner* v. *Nicholson,* 115 Okla. 56 [241 P. 750]; *Julia Oil & Gas Co.* v. *Cobb,* 128 Okla. 260 [262 P. 650]. This rule appears to be supported by *Conklin* v. *Benson,* 159 Cal. 785, where the court says, at page 791 [116 P. 34, 36 L.R.A.N.S. 537]: ''There is no foundation in the facts above set forth for the conclusion that the papers signed by plaintiff were forgeries, and absolutely ineffectual even to serve as a basis for the application of the doctrine of estoppel. The theory of the learned judge of the trial court appears to have been that all of these papers, including the deeds of the Monache lands to the United States, were in effect forgeries and absolutely void. The idea underlying this apparently was that plaintiff was so deceived in the matter of executing these instruments as to bring her within the doctrine of certain cases which substantially hold that where a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument, the paper so signed is just as much a forgery as it would have been had the signature been forced. These decisions are not such as to sustain plaintiff's claim in this regard. The distinguishing feature between all such cases and the case at bar is that here plaintiff fully understood and believed that she was signing papers which, when delivered, would convey all her interest in the Monache lands. She intended to execute papers having this effect. The difference between the papers she thought she was signing, according to the evidence, and the papers she actually signed, was merely one of detail and in no degree material, one set of papers having precisely the ultimate effect of the other, the conveyance of her interest in this land. Her real and only complaint upon her own testimony was her

failure to personally receive full payment for her land claimed to have been occasioned by reason of the failure of her agent to place the papers in escrow, to be taken up as payments were made, and the delivery thereof to Benson without payment first having been made. . . .''

Likewise, the rule is established in California that alteration of a document without authority with the intent to defraud may constitute forgery and that such alteration may consist of the insertion of matter in the document in question after it has been signed. (*People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065]; *People* v. *Jones*, 100 Cal. App. 550, 554 [280 P. 555].)

### III

*The Count Pertaining to the Kling Forgery.*

Mr. and Mrs. Kling found a 1952 Cadillac on the Ran Boys used car lot and defendant asked them how much they would pay for it in addition to turning in their Oldsmobile. Mr. Kling said he would not go any higher than $1,500, whereupon defendant said maybe they could make some kind of an arrangement. Mr. Kling replied that they did not want to pay more than $75 a month. Defendant said that there were a lot of papers to sign and gave the Klings blank forms, which they signed. Defendant sat across the table from them and filled out the forms. Mr. Kling said, ''Now, this is going to be $75 a month.'' Defendant answered, ''Yes, $75.00 a month for 36 months.'' Defendant filled in the purchase order form which the Klings had signed with $2,990 for the trade-in value of their car, $800 as the payoff to General Motors, $540 of which he was going to give them, and a net allowance of $1,650. There was a blank after the space for total unpaid balance. When the Klings got home they took their copy of the purchase order from the steering wheel and saw for the first time that after the total unpaid balance had been written the figures $3,850. The contract balance was shown to be $4050, payable in 30 monthly instalments of $135 each. Neither Mr. or Mrs. Kling had authorized defendant to insert such figures in the contract.

From the foregoing evidence the trial judge reasonably found that defendant had authority to insert only the figure $1,500 as the unpaid balance on the document which had been signed by the Klings, and only the figure $75 as the amount of the monthly payment, and that his act of inserting $3,850 as the unpaid balance and $135 as the monthly payment was

an unauthorized alteration of the purchase order which they had signed. Clearly under the authorities cited above, this evidence constituted a forgery sufficient to sustain the conviction on this count.

Affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied October 14, 1954.