[Crim. No. 6350.   Second Dist., Div. Three.   Jan. 14, 1960.]

THE PEOPLE, Respondent, v. PAUL L. ZUCKER,
Appellant.

Patrick E. Duggan, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information, Paul L. Zucker was accused in Count I of conspiring with C. E. Dutcher to cheat and defraud and to obtain money and property by false pretenses and in Count II he was charged with the grand theft of money and personal property of a value of more than $7,000 from Luther and Fannie B. Hill. Count I was dismissed. In a jury trial upon Count II Zucker was found guilty of grand theft and he was sentenced to state prison. He appeals from the judgment and from the order denying him a new trial and he has noticed appeals from the verdict and from the denial of

his petitions for dismissal, for court orders and for a writ of mandate.

The conviction was based upon evidence of the following facts. Mr. and Mrs. Hill owned two lots in San Pedro on which were situated four houses which they rented. Zucker owned 10 acres of unimproved property in Lancaster. Hill was a warehouseman and longshoreman with a sixth-grade education. Zucker was engaged in the mortgage and finance business under the name of Dale B. Roberts and was president of Pan American Mortgage Corporation and of Master Enterprises Corporation, a subsidiary.

Around June 1, 1956, Hill met Zucker in Lancaster on the premises of one Smith, who owned property contiguous to Zucker's acreage and to whom Zucker was attempting to sell it. Appellant and Hill discussed the possibility of exchanging their respective properties. At a second meeting on June 3d it was orally agreed that Zucker would transfer to Mr. and Mrs. Hill the 10 acres in Lancaster together with a new 1956 2½ ton truck worth about $5,200 in exchange for their two lots, appellant to assume a $7,200 trust deed on the San Pedro property. The escrow was not to be closed unless Zucker delivered clear title to the Lancaster property.

The following day, Zucker and the Hills met at the Land Title Insurance Company where the latter signed escrow instructions providing for the purchase of the Lancaster property for $5,000; the instructions did not mention either the truck or the San Pedro property. After being informed by appellant that the escrow was to be transferred to the Citizens Escrow Company, the Hills met Zucker at the Citizens' office on June 6th. Escrow instructions providing for the exchange of properties were dictated by appellant to the escrow officer and were signed by the parties; Hill testified that he attempted to read the instructions but did not understand them; although Zucker told Mrs. Hill that they were getting clear title to the truck and the Lancaster acreage, the instructions stated that the truck was encumbered by a $1,135 chattel mortgage; Hill was unaware of the existence of the mortgage; had he known of it he would not have signed the instructions. At this time, appellant told the Hills that there were liens against the Lancaster property and that if he could not give clear title he would pay them $5,000.

On June 19th, after repeated requests to do so, Zucker delivered the truck to Mr. and Mrs. Hill. He showed Hill some papers which he said were identical copies of the escrow in-

structions drawn up on June 6th and told him that the originals had been lost in a plane crash while being flown to the Delaware office. Although Hill attempted to read the documents and observed that they were on thinner paper than the instructions of June 6th, he signed them in reliance upon appellant's representation that they were duplicates. The same representation was made to Mrs. Hill, who also signed the documents. The documents consisted of an option contract whereby the Hills agreed to buy the truck from Pan American for $1,823, payable in 30 monthly installments of $60, the seller retaining the right to convert the contract into one of conditional sale; an agreement superseding the June 6th escrow instructions whereby the Hills agreed to sell their lots to Pan American in return for a $5,000 promissory note and the truck, subject to the option contract; and an agreement to purchase from Pan American the Lancaster acreage or the first liens thereon for $5,000. In addition, the Hills signed a grant deed to their property deeding it to Pan American; they did not realize at the time that they were signing a deed. They received from Zucker Pan American's promissory note for $5,000, payable in six months.

Three days later, appellant entered into escrow on behalf of Pan American with a Mr. and Mrs. McCaffrey, transferring the lots to the McCaffreys in consideration of the assignment of a $7,150 note secured by a trust deed on other property. The Hills' grant deed was recorded July 9th and Pan American's deed to the McCaffreys was recorded on July 17th. Several months later, appellant sold the McCaffrey note and trust deed for $5,262; payment was by a check which was deposited in a recently opened bank account of Pan American upon which the authorized drawers were appellant and his wife.

Commencing in July, Mr. and Mrs. Hill made various payments to Pan American upon Zucker's representations that money was due on account of fees for the closing of the June 6th escrow and as reimbursement for insurance premiums on the truck, which he claimed to have paid. Although they obtained receipts for three other payments stating that the payments were on account of the option contract, they did not realize that they were paying for the truck until a short time before it was repossessed by the bank. The Hills were now living in one of the four houses; appellant told them in late July that he owned the lots and asked them to pay rent, which they did. They never received a deed to the acreage in Lancaster and were unsuccessful in their attempts to contact ap-

pellant by telephone. At the time of trial the Hills were paying rent to the McCaffreys on the property which they formerly owned.

Appellant denied his guilt of theft. He testified that the escrow was transferred from the Land Title Insurance Company to the Citizens Escrow Company to avoid delay. The new escrow was to be open for 90 days so as to allow appellant to remove the liens from the Lancaster acreage; the Hills knew of the existence of the liens. The escrow instructions of June 6th were carefully explained to the Hills. The documents which they signed on June 19th were mailed to them five days previously and appellant asked them to consult their attorney and banker; the Hills told him they had done so and had been advised to go through with the deal. Zucker denied telling Mr. and Mrs. Hill that the escrow instructions had been destroyed in a plane crash. The Hills were aware that they would have to pay the $1,135 due on the truck. Appellant tried to remove the liens from the ten acres and identified various cancelled checks paid to lienholders. He spent approximately $5,000 in trying to clear title to the acreage. He offered to pay the $5,000 promissory note before it became due but the district attorney "blowed the deal up." On direct examination appellant testified that the grant deed was given by the Hills as security for the truck but on cross-examination he stated that the deed was given in consideration for the truck.

The first contention to be considered on the appeal is that the allegations of Count II of the information were insufficient to give appellant adequate notice of the offense charged. We cannot agree. Count II alleged that Zucker committed grand theft in wilfully, unlawfully and feloniously taking money and personal property belonging to Mr. and Mrs. Hill. The argument appears to be that the information was defective in that it failed to charge appellant with any specific form of theft and did not allege that he took the Hills' property intending to deprive them permanently of its possession. But the information need not specify the particular kind of theft involved (*People* v. *Nor Woods,* 37 Cal.2d 584 [233 P.2d 897]) nor allege that the property was taken with an intent to steal. (*People* v. *Myrick,* 112 Cal.App. 117 [296 P. 320]; *People* v. *Corenevsky,* 124 Cal.App.2d 19 [267 P.2d 1048].) As amended in 1929, Penal Code, section 952, provides with respect to accusations of theft: "In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another." Appellant

urges that this provision is unconstitutional as it authorizes the filing of pleadings which are too vague to enable the accused properly to prepare his defense. However, the validity of section 952 has long been settled and is no longer subject to question. (*People* v. *Robinson,* 107 Cal.App. 211, 217-218 [290 P. 470] ; *People* v. *Ilderton,* 14 Cal.App.2d 647 [58 P.2d 986].)

The next contention is also devoid of merit. It is that there was a fatal variance between the information and the proof.

Appellant argues, in this connection, that upon an information charging him with the theft of personal property he could not lawfully be convicted of the theft of real property. His argument is based upon the assumption that he was found guilty only of theft in obtaining a deed to the lots by means of false pretenses. But, as we shall see, this is not a correct assumption.

Theft is characterized as the felonious taking of property which is not one's own. (Pen. Code, § 484; *People* v. *Moorhead,* 104 Cal.App.2d 688 [232 P.2d 268].) Since the amendment in 1927 to section 484 of the Penal Code, an accused may be convicted of grand theft upon proof showing either larceny, embezzlement or obtaining property by false pretenses. (*People* v. *Cannon,* 77 Cal.App.2d 678 [176 P.2d 409].)

Embezzlement is the fraudulent misappropriation of property by a person to whom it has been entrusted. (Pen. Code, § 503.) We have already related Hill's testimony that appellant induced him to sign a number of new agreements by representing that they were exact copies of the earlier escrow instructions. It was obviously Hill's understanding of the transaction that these papers were to be deposited in the escrow to replace the originals which had been lost. Hill could reasonably have understood that the deed was also to be deposited. Upon this theory of the case, Zucker was Hill's agent for the purpose of placing the deed in escrow and the application of the deed to his own use through an immediate sale to the McCaffreys constituted embezzlement. (Pen. Code, § 506.) Furthermore, in deeding the lots in return for a $7,150 promissory note and in discounting the note for cash appellant merely transmuted the property he acquired as Hill's agent into another form. His failure to account to the Hills after each of these transactions constituted additional acts of embezzlement upon which the jury could reasonably have found him guilty of theft.

Penal Code, section 956 reads "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, or of the place where the offense was committed, *or of the property involved in its commission,* is not material." (Emphasis added.)

In *People* v. *Fleming,* 220 Cal. 601 [32 P.2d 593], the defendant, a stockbroker charged with the embezzlement of certain shares of stock, was convicted of embezzling the money he received from the complaining witnesses on account of the purchase price of the stock; on the appeal, the Supreme Court relied upon section 956 in holding the variance to be immaterial. The Fleming case is analogous and we regard it as controlling. Zucker was accused of stealing over $7,000 in money and personal property on June 19th. The evidence disclosed the embezzlement of a deed and its transmutation into a promissory note for $7,150 which appellant sold for over $5,000 in cash. Appellant's activities before and after June 19th were part of a single scheme to appropriate the property of the Hills. As we have said, the evidence warranted a conviction of theft based upon any one of three distinct acts of embezzlement committed by appellant. At most the information merely contained an erroneous description of the stolen property and the variance must be deemed to have been a harmless one.

Appellant's third contention is that the evidence was insufficient to establish his guilt of theft. He argues that he could not properly have been convicted of theft by means of false pretenses because the Hills got what they bargained for, because the making of the false pretenses was not corroborated and for the reason that since Hill did not execute a deed on June 6th, he could not have signed the grant deed on June 19th in reliance upon any representation by Zucker that the deed was one of the lost escrow papers. These contentions are without merit.

If possession of the deed was obtained by false pretenses appellant was guilty of grand theft of the deed. (Pen. Code, § 532; *People* v. *Rabe,* 202 Cal. 409 [261 P. 303].) ▉▉▉ The testimony of Mr. and Mrs. Hill, together with the documents they signed June 19th, which appellant falsely represented to each of them to be copies of the June 6th escrow instructions, was sufficient as proof of the employment of false pretenses in the procurement of the deed as required by section 1110 of the

Penal Code. (*People* v. *Bennett*, 122 Cal.App.2d 244 [264 P.2d 664]; *People* v. *Nesseth*, 127 Cal.App.2d 712 [274 P.2d 479].) ▋ If, as appellant contends, the Hills intended to part with title to their property, they did so with the understanding that they would get clear title to the Lancaster property and the truck. If appellant received the deed in an agency capacity, which we have previously discussed, he was guilty of embezzlement of the money he received upon the sale of the trust deed. As a result of appellant's fraud the Hills have lost their San Pedro property and the truck has been repossessed; appellant retains his 10 acres at Lancaster and has received $5,262 cash from the sale of the trust deed which he received on the sale of the Hills' property. For appellant to take such unconscionable advantage of innocent and trusting people as the Hills were shown to be was in our opinion even more heartless than it would have been to rob them at the point of a gun. To hold that upon the information and the evidence appellant has committed no crime would be a gross miscarriage of justice.

It is contended further in attacking the sufficiency of the evidence that the testimony of Mr. Hill was inherently improbable. Although his testimony was confused and hesitating in some respects the jury made no mistake in regarding him as an honest and truthful witness.

▋ A fourth contention is that appellant was deprived of his right to representation by counsel upon the hearing of his written motion for new trial, which he filed in propria persona. It is wholly without merit.

Zucker was represented during the pretrial proceedings by a deputy public defender whom he discharged because "he came up there and deliberately lied to me." The court then appointed private counsel to defend appellant. In his new trial motion Zucker accused the attorney of conspiring with the prosecution to convict him unjustly and on April 10, 1958, the time set for argument on the motion, at appellant's request, the court relieved the attorney of his appointment. The matter was continued until April 24th. On that date, appellant asked the court to appoint another attorney. After considerable discussion, the court stated that Zucker had already discharged two reputable and competent attorneys on the grounds that they were liars and cheats and denied the request. The matter was continued until May 8th to enable appellant to secure counsel and on that date appellant obtained "just one more week" to employ a lawyer. May 15th,

Zucker told the court that he had been unable to obtain an attorney and renewed his request for the appointment of counsel. The court denied the request, whereupon appellant argued his motion for new trial.

The record affords no support for the claim that appellant was deprived of his right to counsel. ▮▮ He was, of course, entitled to represent himself or to be represented by an attorney of his own choice. (*Powell* v. *Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527] ; *People* v. *McGarvy,* 61 Cal.App.2d 557 [142 P.2d 92] ; *People* v. *Avilez,* 86 Cal.App. 2d 289 [194 P.2d 829].) But the right was one to be "exercised seasonably and not through mere caprice." (*People* v. *Gaither,* 173 Cal.App.2d 662, 671 [343 P.2d 799].) ▮▮ Appellant had received an able and vigorous defense upon the trial. His attitude toward the public defender and his private attorney was one of hostility and suspicion. He was obstreperous, unreasonable and impossible to satisfy. In view of appellant's unjustified criticism of his former attorneys the court was warranted in believing that a third appointment would be a futile gesture. Zucker was given ample time to obtain another lawyer. We have found no abridgment of his constitutional rights.

The final contention on the appeal is that a new trial should have been granted upon numerous grounds set out in appellant's written motion. Each of the matters related to some alleged violation of his constitutional rights by the court or by law enforcement officials. Appellant has merely listed the points in his brief and he asserts that the court should have heard evidence upon the motion. But appellant did not file any affidavits or seek to introduce any oral evidence upon the motion. We need say only that we have carefully examined the points urged on the motion for new trial and find them lacking in merit.

The judgment and the order denying new trial are affirmed. The purported appeals from the verdict and from the denial of the petitions for dismissal, for court orders and for a writ of mandate are dismissed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied February 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1960. Peters, J., was of the opinion that the petition should be granted.