[Crim. No. 2198.    Fourth Dist., Div. One.    Feb. 25, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. MILTON CARSON, Defendant and Appellant.

Herbert E. Selwyn for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Defendant Milton Carson appeals a judgment of conviction by a jury of forgery (Pen. Code, § 470). He was placed on probation on certain conditions. The issues on appeal involve evidentiary rulings, instructions and sufficiency of the evidence.

Defendant sold Mr. and Mrs. Harris an aluminum siding installation for their home. The Harrises signed a document entitled ''Proposal'', which sets forth in large print the details of the work and materials to be furnished, the price, and monthly payments. Near the beginning of much small print the ''Proposal'' states that upon completion of the work, the owner agrees to execute and deliver a note ''in accordance with his obligation and a completion certificate as requested by the contractor.''

Six weeks later when the work was nearly completed, defendant and his employer, Jerry Kaplan, went to the Harrises' house and requested them to sign a sheaf of papers which appears to be similar to that described in *Buck* v. *Superior Court*, 232 Cal.App.2d 153, 156 [42 Cal.Rptr. 527]— three copies, separated by carbon paper, of a document entitled ''Do Not Record. Lien Contract,'' buried in the fine

print of which is the statement "In addition to any other right or remedy given to the holder hereof, the undersigned hereby grants to the holder hereof, a deed of trust to the above described real property as security for the faithful performance of his, her or their obligation under the contract." At the bottom of the sheaf of papers was a deed of trust form.

Defendant told the Harrises that the sheaf of papers was a "job completion form" which had to be signed before he could receive the necessary funds to complete the installation. Defendant made no mention of a 'deed of trust. Except for the "total cash sale price" typed in, the Harrises signed the forms in blank. The "lien contract", completed later, was assigned to Aluminum Acceptance Corporation, which recorded a trust deed encumbering the property in the amount of $4,446.12 ("total cash sale price" of $2,800 plus "time price differential" of $1,646.12), to be paid in monthly payments over a seven-year period.

The Harrises testified they would not have signed anything had they known a trust deed was being established on their property. The People presented evidence that defendant had secured deeds of trust from two other homeowners by similar devious means. One of the witnesses testified she would not have bought aluminum siding from defendant had she known she was signing papers in blank creating a trust deed on her home, and she volunteered an additional nonresponsive statement, "It may cause us to lose our home." Defendant's objection to this statement on grounds of irrelevancy and immateriality was overruled. The proper objection, not made, would have been that it was not responsive, that it was a voluntary statement. It was relevant and material in showing the witness' state of mind when she signed the papers. The ruling was correct.

The evidence of other homeowners about similar transactions by defendant was properly admitted, not to show criminality of the 'defendant, but a similar plan of operation which logically, naturally and by reasonable inference tended to establish facts material to the People's case. (*People* v. *Lopez*, 60 Cal.2d 223, 249-250 [32 Cal.Rptr. 424, 384 P.2d 16].) The court correctly instructed the jury in this respect.

The essence of defendant's appeal rests upon the applicability of *People* v. *Nesseth,* 127 Cal.App.2d 712, 720 [274 P.2d 479], which states: ". . . the rule is established in California that alteration of a document without authority with the intent to defraud may constitute forgery and that such altera-

tion may consist of the insertion of matter in the document in question after it has been signed.'' (Citations.) Defendant asserts that neither statute nor previous case law allows this interpretation of forgery. He seeks to distinguish *People* v. *Nesseth, supra,* 127 Cal.App.2d 712, and he directly attacks its reasoning.

We hold that Penal Code, section 470 (forgery) was correctly applied to the facts here, and an instruction on it was properly framed for the jury's consideration. The issue is settled in *Buck* v. *Superior Court, supra,* 232 Cal.App.2d 153, 161-162, where the court said: ''Where a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument, the paper so signed is just as much a forgery as it would have been had the signature been forged. [Citations.] An encumbrance may be the subject of forgery. [Citation.] The crime of forgery is complete when one makes or passes an incorrectly named instrument with intent to defraud, prejudice, or damage, and proof of loss or detriment is immaterial. [Citations.] Whether the instrument forged has independent value is unimportant; the crime is complete when the act is done with the requisite intent.'' Contrary to defendant's contention, this interpretation of Penal Code, section 470, does not offend due process by failing to warn of prohibited behavior.

While an instruction was given defining the more common instance of forgery involving the use of the name of another, this was not prejudicial error in view of the other instructions properly given, and may have aided defendant because there was no evidence that defendant signed or altered another person's name or his writing.

The judgment, sustained by sufficient evidence, is affirmed.

Coughlin, J., and Whelan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1966.