518 P.2d 579

The STATE of Arizona, Appellee,

v.

Michael Lawrence ROVIN, Appellant.

No. 2 CA–CR 341.

Court of Appeals of Arizona,
Division 2.

Jan. 31, 1974.

Rehearing Denied March 5, 1974.

Review Denied April 9, 1974.

Gary K. Nelson, Atty. Gen., Phoenix by Howard L. Fell, Asst. Atty. Gen., Tucson, and Jack L. Lansdale, Certified Third-Year Law Student under Rule 28(e), for appellee.

Ed Bolding, Pima Co. Public Defender by Charles J. Babbitt, Asst. Public Defender, Tucson, and Susan E. Connors, Certified Third-Year Law Student under Rule 28(e), for appellant.

OPINION

KRUCKER, Judge.

Appellant Rovin brings this appeal to challenge his conviction of forgery and the sentence of not less than two nor more than three years imposed thereon. He contends that the lower court erred in denying his motion for a directed verdict of acquittal and that the sentence of imprisonment was excessive and an abuse of discretion since the trial court considered improper matters and ignored appellant's background and prior record.

SUFFICIENCY OF THE EVIDENCE
TO SUSTAIN CONVICTION OF
FORGERY

Briefly, the facts most favorable to support the conviction are as follows. Appel-

lant was an employee of the Maldonado Security Agency whose services had been retained by Mr. Luna, a State Farm Insurance Agent, to make nightly checks of his business premises. Mr. Luna was not acquainted with appellant. On January 24, 1973, Mr. Luna signed a check and placed it in his checkbook which he deposited in the bottom drawer of his secretary's desk. In all other respects the check was left blank. The reason Mr. Luna signed the check was that he expected delivery of some office furniture, and since he planned to be out of town for a few days he left the signed check so that his secretary could pay the furniture freight bill.

On January 27, Mr. Luna, while in California, received a phone call from his secretary who informed him that the check was missing from the checkbook. When he returned to Tucson two days later, he went to the Arizona Bank and learned that the check had already cleared. Appellant's name had been filled in as payee, the amount had been filled in as $250.00, and the endorsement was the same as the named payee. The check was cashed on January 25 and according to the bank teller who cashed it, it was endorsed in her presence. The driver's license number of the endorser, address and telephone number were recorded under the endorsement.

According to the owner of the security agency, on the night in question appellant was assigned to be the "gate man" at Tucson Country Club Estates. An agency logbook contained an entry dated January 24, 1973, 9:45 p. m., which indicated that the State Farm office had been found open and had been locked. The entry was initialed M. L. R., the initials used by appellant. The appellant stipulated that the following words and figures had been written in by him upon the check in question: January 25, 1973; M. L. Rovin; $250.00; Two-Hundred-Fifty; and the endorsement M. L. Rovin on the backside of the check. In addition, he stipulated that the entry in the logbook dated January 24, 1973, was written by him.

A.R.S. § 13–421, as amended, provides in pertinent part:

"A. A person is guilty of forgery who, with intent to defraud:

1. Signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, or falsely makes, alters, forges or counterfeits any . . . check . . . or utters, publishes, passes or attempts to pass . . . any of the false, altered, forged, or counterfeited matter described above, knowing it to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person. . . ."

The thrust of appellant's argument on appeal is that he could not be convicted of forgery since he did not pass a "false" instrument, i. e., the instrument was genuine in that it bore Mr. Luna's true signature and both the name inserted as payee and the endorsement were appellant's true name. We do not agree with appellant's position.

■■■ A.R.S. § 13–421, as amended, supra, includes within the definition of forgery "alteration" of a check. We are of the opinion that when the appellant came into possession of the check signed by Mr. Luna, and, without being authorized to do so, filled in the blank spaces, he "altered" the check within the purview of the forgery statute. Alteration of a document without authority to do so may constitute forgery and such alteration may consist of insertion of matter in the document after it has been signed. People v. Jones, 100 Cal. App. 550, 280 P. 555 (1929); People v. McKenna, 11 Cal.2d 327, 79 P.2d 1065 (1938); State v. Nesseth, 127 Cal.App.2d 712, 274 P.2d 479 (1954); 36 Am.Jur.2d Forgery § 16. An unauthorized insertion of the payee's name and the amount has been held to constitute forgery. State v. Daems, 97 Mont. 486, 37 P.2d 322 (1934); People v. Kubanek, 370 Ill. 646, 19 N.E.2d 573 (1939).

Although the federal courts are not in agreement as to what constitutes a "forged

security" within the purview of 18 U.S.C. A. § 2314 proscribing transportation of forged securities, some courts have held that a money order or traveler's check is a "forged" security within the statute notwithstanding the insertion of the defendant's true name as payee. United States v. Di Pietto, 396 F.2d 283 (7th Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297, rehearing denied, 394 U.S. 994, 89 S.Ct. 1451, 22 L.Ed. 2d 771; United States v. Smith, 426 F.2d 275 (6th Cir. 1970); cert. denied 400 U.S. 868, 91 S.Ct. 110, 27 L.Ed.2d 107; United States v. Franco, 413 F.2d 282 (5th Cir. 1969), cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87; United States v. Hamilton, 322 F.Supp. 1315 (D.C.1971), aff'd 3 Cir., 455 F.2d 1268.

In the *Di Pietto* case, the court indicated that the money order did not evidence an obligation until the amount and name of the payee were inserted. In the *Franco* case, the court held that a stolen, blank traveler's check becomes a forged security when someone else fills in the signature spaces, even if he uses his own signature for the reason that a traveler's check is cashed on the credit of the issuer. Since American Express had never issued the particular traveler's checks to anyone, the first person to fill them in created forged securities. In the *Smith* case, the defendant filled in his own name as payee and endorsed stolen money orders and the court held that the insertion of such necessary information in the blank money orders constituted forgery. *See*, contra, United States v. Brown, 344 F.Supp. 291 (D.C.1972).

■ We agree that false making relates to the genuineness of execution; however, alteration relates to the falsity of content. First American State Bank v. Aetna Casualty & Surety Co., 25 Wis.2d 190, 130 N. W.2d 824 (1964). When Mr. Luna signed the blank check it was not evidence of an obligation until completed. A.R.S. § 44–2515 provides:

"A. When a paper whose contents at the time of signing shows that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

B. If the completion is unauthorized the rules as to material alteration apply (§ 44–2544), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting."

A.R.S. § 44–2544 provides in part:

"A. Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in:

\*     \*     \*     \*     \*     \*

2. An incomplete instrument, by completing it otherwise than as authorized.
. . ."

The evidence reflects that when Mr. Luna signed the check he intended it to become a negotiable instrument upon completion by his secretary. She was the only one authorized to fill in the blank spaces for a designated purpose. Appellant's acquisition of the check was unlawful and his unauthorized completion constituted a material alteration of the check. Appellant states in his brief that "While the obtaining of the check may have been wrongful, the completion of it was not." We are unable to subscribe to such argument since the completion of the check was an alteration. We find no error in the trial court's refusal to direct a verdict of acquittal.

## SENTENCE

■ The crime of forgery is punishable by imprisonment in the state prison for not less than one nor more than fourteen years. Appellant was sentenced to a term of not less than two nor more than three years. We have examined the reporter's transcript on sentencing and find no abuse of discretion. The trial court has wide discretion in sentencing matters and a sentence which is within the statutory limits will be upheld unless under the circumstances it is so clearly excessive as to con-

stitute an abuse of discretion. State v. Masters, 108 Ariz. 189, 494 P.2d 1319 (1972).

No useful purpose would be accomplished by a detailed repetition of the trial judge's explanation of his reasons for the sentence. Suffice it to say that despite the fact that appellant had no prior criminal record, the judge did not deem him a good candidate for probation. Appellant had testified in his own behalf at trial and the jury, by finding him guilty, apparently rejected his story as a fabrication. The trial judge, who likewise heard the story, also concluded that he had lied. The fact that appellant, at sentencing, made the following statement apparently reinforced the trial court's conclusion as to his veracity:

"I feel I'm not guilty, but the Court say I am so I am according to them. But according to me I'm not guilty."

Appellant has indicated that at the time of sentencing the trial judge had possession of a Secret Service report allegedly connecting appellant with the forgery of government checks. While it is true that the judge had knowledge of it, the record reflects that the judge merely considered the report corroborative of his belief that appellant had been dishonest and that it was not considered in determining the sentence.

We find no abuse of the trial court's discretion to exercise its power to suspend imposition of sentence. As we stated in State v. Oliver, 9 Ariz.App. 364, 452 P.2d 529 (1969):

"Since the purpose of A.R.S. § 13–1657 is to make the punishment fit the offender [citation omitted], the trial judge was evidently of the opinion that the defender [citation omitted], the trial judge tative program. We cannot denounce this as arbitrary or capricious, hence our interference would be inappropriate." 9 Ariz.App. at 367, 452 P.2d at 532.

Judgment and sentence affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.